STATE OF NORTH CAROLINA, EX REL. COMMISSIONER OF IN-
SURANCE, Appellee v. INTEGON LIFE INSURANCE COMPANY,
FIRST PROTECTION LIFE INSURANCE COMPANY, STURDI-
VANT LIFE INSURANCE COMPANY, AMERICAN DEFENDER
LIFE INSURANCE COMPANY, THE CITADEL LIFE INSUR-
ANCE COMPANY, DURHAM LIFE INSURANCE COMPANY,
CHARTER NATIONAL LIFE INSURANCE COMPANY, FORE-
MOST LIFE INSURANCE COMPANY, UNION SECURITY LIFE
INSURANCE COMPANY, PROVIDENT ALLIANCE INSURANCE
COMPANY, LTD., DIAMOND STATE LIFE INSURANCE COM-
PANY, FIRST UNION NATIONAL BANK, NORTH CAROLINA
NATIONAL BANK, THE NORTHWESTERN BANK, PEOPLES
BANK & TRUST COMPANY, THE PLANTERS NATIONAL BANK
AND TRUST COMPANY, AND WACHOVIA BANK & TRUST COM-
PANY, N.A., Appellants

No. 7510INS660

(Filed 17 December 1975)

1. **Insurance § 27.5— credit life insurance rates — authority of Commissioner of Insurance**

    The Commissioner of Insurance was not authorized to set rates
    for credit life insurance by the power given him under G.S. 58-9(1)
    to make "rules and regulations," by G.S. 58-54.3, the statute prohibit-
    ing unfair methods of competition or unfair or deceptive acts or prac-
    tices in the insurance industry, by the rate making authority granted
    under G.S. 58-260.2 for credit accident and health insurance, or by the
    acquiescense of companies writing credit life insurance in rates set
    by prior Commissioners of Insurance.

2. **Administrative Law § 5; Insurance § 27.5— rules for credit insurance — jurisdiction of appeal**

    An appeal from an order of the Commissioner of Insurance pro-
    mulgating rules and regulations for credit life and credit accident and
    health insurance lies in the Superior Court of Wake County under
    G.S. 58-9.3, not in the Court of Appeals.

APPEAL by respondents from two orders issued by the
North Carolina Commissioner of Insurance on 7 April 1975.
Heard in the Court of Appeals 18 November 1975.

The Commissioner of Insurance, John Ingram, held hear-
ings, beginning 23 September 1974 and continuing on twelve
different days ending 20 January 1975, in order "to fully ex-
amine the entire credit insurance system" in North Carolina.
Prior to the commencement of the hearings, written notice was
mailed to each life insurance company licensed to write credit
life and credit accident and health insurance in North Carolina
and notice was published for the public. After the conclusion

of the hearings, the Commissioner considered the testimony and evidence offered and on 7 April 1975 entered two orders, one setting the maximum rates to be charged in North Carolina for credit life insurance and the other promulgating rules and regulations governing credit life and credit accident and health insurance in North Carolina. Both orders were to become effective on 2 June 1975. Respondents appealed to the North Carolina Court of Appeals.

*Davis & Hassell by Charles R. Hassell, Jr., for Commissioner appellee.*

*Young, Moore & Henderson by Charles H. Young; Allen, Steed and Pullen by Arch T. Allen and Thomas W. Steed, Jr.; Jordan, Morris & Hoke by John R. Jordan, Jr., for appellants.*

HEDRICK, Judge.

Credit life insurance is defined by statute to be "insurance upon the life of a debtor who may be indebted to any person, firm, or corporation extending credit to said debtor," and "may include the granting of additional benefits in the event of total and permanent disability of the debtor." G.S. 58-195.2. Credit accident and health insurance is defined by statute to be "insurance against death or personal injury by accident or by any specified kind or kinds of accident and insurance against sickness, ailment, or bodily injury of a debtor who may be indebted to any person, firm, or corporation extending credit to such debtor." G.S. 58-254.8. As used in the orders appealed from and in this opinion, these terms apply to policies "where the original beneficiary is a creditor, to the extent of the creditor's interest."

Because of the different disposition required as to each of the two orders, we shall consider them separately.

### ORDER OF THE COMMISSIONER SETTING MAXIMUM CREDIT LIFE INSURANCE RATES

The Commissioner, in his order, concluded that there existed in North Carolina what is termed as "reverse competition" which tends to force the price of insurance premiums up rather than down. Because of competition among insurance companies to have lending institutions offer credit insurance policies to debtors from one insurance company to the exclusion of all other insurance companies and because there is no market for

debtors to obtain credit insurance other than from the lending institution, there results competition among each insurance company to offer higher commissions to the lending institution in order to have the institution issue only its insurance to the exclusion of other companies. Higher premiums are charged debtors in order to cover the cost of the commissions.

The Commissioner also concluded that the premium rates charged in North Carolina were the highest in the United States and that such rates were excessive.

The Commissioner, in his order, found that reverse competition was (1) "a practice injurious to the public of this State and . . . an appropriate subject of regulation by the Commissioner pursuant to [the power granted in] G.S. 58-9 (1)," and (2) "an unfair method of competition and . . . an unfair and deceptive act or practice in the business of insurance" as defined in G.S. 58-54.4 and prohibited by G.S. 58-54.3. The Commissioner found that excessive rates were a "direct adverse consequence" of reverse competition and were likewise an appropriate subject of regulation pursuant to 58-9 (1) and 58-54.3. In addition, regulation of rates for credit life insurance was "consistent" with the authority to set maximum credit accident and health insurance rates as provided by G.S. 58-260.2, and as defined in G.S. 58-254.8 to include "accidental death." Finally, the Commissioner found that "[t]here is no law in North Carolina which specifically prohibits the Commissioner of Insurance from regulating credit life insurance rates, and by custom and practices former Commissioners of Insurance have heretofore set maximum rates for credit life insurance, and such maximum rates have been adhered to by insurance companies writing credit life insurance in this State."

Based on the above findings, the Commissioner concluded that he had "the responsibility and authority to regulate credit life insurance rates," and in his order set maximum premium rates for credit life insurance at approximately one-half the prevailing premium rates then being charged.

The authority of the Commissioner to set rates must be conferred by statute. *In re Filing by Automobile Rate Office,* 278 N.C. 302, 180 S.E. 2d 155 (1971) ; *In re Filing by Fire Ins. Rating Bureau,* 275 N.C. 15, 165 S.E. 2d 207 (1969) ; *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 118 S.E. 2d 792 (1961) ; 1 Strong, N. C. Index 2d, Administrative

Law, § 3. While the legislature may delegate rate making authority to an administrative officer where sufficiently clear standards exist to control his discretion, "[o]bviously, the Commissioner of Insurance has no authority to prescribe or regulate premium rates, except insofar as that authority has been conferred upon him . . . [by statute]. In exercising the authority, he must comply with the statutory procedures and standards." *Filing by Fire Ins. Rating Bureau, supra* at 33, 165 S.E. 2d at 220.

[1] Appellants contend that nothing in the statutes cited by the Commissioner grant to him the express or implied authority to set rates for credit life insurance. We agree.

> "Express powers delegated by statute and implied powers reasonably necessary for its proper functioning are the only powers which an administrative agency possesses. . . . Thus, it is clear that administrative agencies must find within the statutes justification for any authority which they purport to exercise." *Insurance Co. v. Lanier, Comr. of Insurance,* 16 N.C. App. 381, 384, 192 S.E. 2d 57, 58-59 (1972).

The Commissioner purports to act under G.S. 58-9(1) and 58-54.3. G.S. 58-9(1) provides:

> "*Powers and duties of Commissioner.*—The Commissioner shall:
>
> (1) See that all laws of this State governing insurance companies, associations, orders or bureaus relating to the business of insurance are faithfully executed, and to that end he shall have power and authority to make rules and regulations, not inconsistent with law, to enforce, carry out and make effective the provisions of this Chapter, and to make such further *rules and regulations* not contrary to any provision of this Chapter *which will prevent practices injurious to the public by insurance companies,* fraternal orders and societies, agents, adjusters and motor vehicle damage appraisers. The Commissioner may likewise, from time to time, withdraw, modify or amend any such regulation." (Emphasis added.)

The Commissioner's power to make "rules and regulations" can in no way grant him the authority to carry out the "legislative power" (Filing by Automobile Rate Office, *supra* at 319)

Comr. of Insurance v. Insurance Co.

of setting rates. Rate making authority, as distinguished from purely administrative functions, must be derived from a clear statutory enactment granting the Commissioner such power. *See generally Comr. of Insurance v. Automobile Rate Office,* 287 N.C. 192, 214 S.E. 2d 98 (1975). *Insurance Co. v. Lanier, Comr. of Insurance, supra.* An administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law. 1 Strong, N. C. Index 2d, Administrative Law § 3; 1 Am. Jur. 2d, Administrative Law, § 126. Clearly, G.S. 58-9(1) contains no express grant of authority to set rates and it is not such an implied power as is "reasonably necessary for [the Commissioner's] proper functioning." *Insurance Co. v. Lanier, Comr. of Insurance, supra.*

G.S. 58-54.3 provides:

"*Unfair methods of competition or unfair and deceptive acts or practices prohibited.*—No person shall engage in this State in any trade practice which is defined in this Article as or determined pursuant to this Article to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance."

Chapter 58, Article 3A, which includes this statute was enacted to regulate trade practices in the insurance business in accordance with directives from federal anti-trust law. G.S. 58-54.1. Filing by Automobile Rate Office, *supra.* Nothing in the quoted statute grants authority to the Commissioner to take any action whatsoever. It merely prohibits unfair methods of competition or unfair or deceptive acts or practices in the insurance industry, which are exhaustively defined in G.S. 58-54.4. Nothing in 58-54.4 declares the charging of excessive rates to be an act or practice within the prohibition of 58-54.3. Moreover, 58-54.5, 54.6, and 54.7 which provide for the Commissioner's power to act in regard to "any unfair method of competition or in any unfair or deceptive act or practice prohibited by G.S. 58-54.3 . . . ", grant no remedial power to the Commissioner to remedy unfair trade practices other than the power to investigate, bring charges, and issue cease and desist orders. Clearly Article 3A generally and 58-54.3 specifically contain no authority to issue orders setting premium rates.

The Commissioner also found that rate making authority for credit life insurance is "consistent" with rate making au-

thority granted under G.S. 58-260.2, for credit accident and health insurance (repealed by Session Laws 1975 c. 660 s. 4, ratified 18 June 1975). The fact that the two types of insurance are defined differently indicates that two distinct types of policies are contemplated. The conspicuous absence of express rate making authority with regard to credit life insurance when such authority exists with regard to credit accident and health insurance manifests the fact that no such authority has been conferred. Since G.S. 54-260.2 applies only to credit accident and health insurance defined in G.S. 58-254.8, it has no application to credit life insurance and cannot be seen as granting implied authority to set credit life rates.

Finally, the Commissioner's contention that acquiescense by companies writing credit life insurance in rates set by prior Commissioners of Insurance gives the present Commissioner the authority to fix credit life rates is untenable.

We hold the Commissioner had neither express nor implied authority to enter the order setting credit life insurance rates. The order appealed from is vacated.

ORDER OF COMMISSIONER PROMULGATING "RULES & REGULATIONS GOVERNING CREDIT LIFE AND CREDIT ACCIDENT & HEALTH INSURANCE"

While appellants have argued extensively the merits of the Commissioner's action in promulgating rules and regulations with regard to credit insurance, we do not deem it necessary or appropriate to consider these arguments.

G.S. 58-9.3 in pertinent part provides:

"*Court review of orders and decisions.*— (a) Any order or decision made, issued or executed by the Commissioner, except an order to make good an impairment of capital or surplus or a deficiency in the amount of admitted assets and except an order or decision that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest or that a classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory, or not in the public interest, shall be subject to review in the Superior Court of Wake County on petition by any person aggrieved. . . ."

G.S. 58-9.4 in pertinent part provides:

"*Court review of rates and classification.*—Any order or decision of the Commissioner that the premium rates charged or filed on all or any class of risks are excessive, inadequate, unreasonable, unfairly discriminatory or are otherwise not in the public interest or that a classification or classification assignment is unwarranted, unreasonable, improper, unfairly discriminatory or not in the public interest may be appealed to the North Carolina Court of Appeals by any party aggrieved thereby."

[2]   Clearly an appeal from an order promulgating rules and regulations lies in the Superior Court in accordance with G.S. 58-9.3. The order appealed from is not "an order to make good an impairment of capital or surplus or a deficiency in the amount of admitted assets" or an order regarding rates, or one concerned with a "classification assignment." Accordingly, the appeal from the order promulgating rules and regulations is dismissed.

The result is: The order purporting to fix credit life insurance rates is vacated; the appeal from the order promulgating rules and regulations with respect to credit life and credit accident and health insurance is dismissed.

Judges PARKER and ARNOLD concur.