LOUCHHEIM, ENG & PEOPLE, INC. v. JAMES H. CARSON, JR., AND NORTH CAROLINIANS FOR CARSON, A POLITICAL COMMITTEE

No. 7710SC205

(Filed 21 February 1978)

1. Elections § 15— illegal campaign contributions—advances

The advance of money or anything of value to a political candidate by a corporation, labor union or business entity constitutes an illegal contribution under G.S. 163-278.19. G.S. 163-278.6(6),(9).

2. **Elections § 15— illegal campaign contributions—purpose of statutes**

The purpose of statutes regulating campaign contributions and expenditures by corporations and labor unions is to protect the populace from undue influence by corporations and labor unions, and to insure the responsiveness of elected officials to the public at large.

3. **Elections § 15— political candidate—advancement of money by public relations firm for advertising—illegal contribution or expenditure**

The payment of money by a corporation engaged in the business of public relations for media advertising for the campaign of a political candidate with the expectation of reimbursement by the candidate's campaign committee when sufficient funds were raised to cover these expenses constituted an advancement and thus was an illegal contribution or expenditure within the purview of G.S. 163-278.19(a).

4. **Elections § 15— illegal campaign contributions—constitutionality of statute**

The trial court's construction of G.S. 163-278.19 as prohibiting a public relations firm from paying the advertising expenses of a political candidate with the expectation of reimbursement when funds were raised by the candidate does not bar all credit transactions between businesses and political candidates, and the statute, on its face and as applied by the court, does not constitute an unconstitutional intrusion upon the public relations firm's rights to contract and carry on a lawful business activity.

5. **Contracts § 6; Elections § 15— obligation to repay illegal campaign advancement—no enforcement by courts**

The courts will not enforce an obligation to repay advancements made by a corporation to a political candidate in violation of G.S. 163-278.19.

APPEAL by plaintiff from *Bailey, Judge.* Judgment entered 17 December 1976 in Superior Court, WAKE County. Heard in the Court of Appeals 17 January 1978.

Civil action wherein plaintiff seeks to recover $22,251.65 for debts allegedly owed by the defendant, James H. Carson, Jr., for services rendered during the defendant's unsuccessful campaign for election to the office of Attorney General of North Carolina. The allegations in plaintiff's complaint are summarized and quoted as follows:

Plaintiff is a corporation engaged in the business of public relations. In July 1974 it transacted business in Raleigh, North Carolina, as Capital Communications of North Carolina, Inc. During the same period of time the defendant held the office of Attorney General of North Carolina and was preparing to campaign in the impending election as the Republican candidate for the same office. On 1 July 1974 the defendant and his campaign staff

conferred with officers of the plaintiff and agreed that plaintiff would manage the media campaign for defendant. The defendant and his staff authorized the plaintiff to do whatever was necessary to handle this portion of the campaign. The plaintiff further alleged:

7. That the defendant, acting for himself and through his campaign managers, workers, employees, and agents, assured the plaintiff at all times that it would be paid fully for its services rendered and for monies advanced to purchase media advertising, posters, buttons, and other campaign devices for defendant's campaign.

8. That relying upon the promises and assurances of the defendant, the plaintiff commencing in July, 1974, and continuing through October, 1974, rendered full services to the defendant in procuring, arranging, directing and generally managing all aspects of media advertising of defendant's campaign for Attorney General; that the plaintiff, in the defendant's behalf, and in reliance upon the assurance of payment, advanced money for the purchase of media advertising for defendant's campaign; that from time to time, the defendant paid or caused to be paid through his campaign committee portions of the amounts outstanding for such services and for money advanced to purchase media advertising.

The defendant was at all times aware of the expenditure being made in his behalf and as of 30 October 1974 "the defendant owed to the plaintiff for actual money advanced the sum of Nineteen Thousand Three Hundred Forty-nine and 26/100ths Dollars ($19,349.26)," plus $2,902.39 in commissions. On 28 October 1974 the defendant's campaign committee sent a check payable to plaintiff in the amount of $10,000, but the check was returned for lack of sufficient funds.

In his answer the defendant denied the material allegations of the complaint and set up several defenses, among which appears the following:

2. That the Complaint alleges that said corporation advanced funds in the approximate amount of $20,000.00 for the political campaign, in an effort to elect the defendant to the office of Attorney General of North Carolina.

3. That North Carolina General Statute § 163-728.6(9) [sic] defines the word "expenditure" to include any advance, loan or transfer of funds.

4. That North Carolina General Statute § 163-278.19 prohibits a corporation from making any expenditure in aid of or on behalf of or in opposition to any candidate or political committee.

. . .

6. That public policy of the State of North Carolina prohibits condoning unlawful activities by Capital Communications, Inc., and its president, Jerome Louchheim and requires that the action be dismissed.

Defendant also filed a counterclaim in which he alleged that plaintiff, through its president Jerome Louchheim, knowingly and wilfully violated the law in "arrang[ing] an unlawful extension of credit to the campaign efforts of the defendant," and in doing so, damaged defendant's reputation in the amount of $50,000. Subsequent to filing his answer and counterclaim, the defendant moved pursuant to Rule 12(c) of the North Carolina Rules of Civil Procedure for judgment on the pleadings.

In a reply to the defendant's counterclaim the plaintiff alleged that it "did not make a contribution or expenditure as the term is used in G.S. 163-278.19, but paid for the cost of some advertising pending the receipt by the committee of campaign funds."

The trial court in consideration of defendant's motion for judgment on the pleadings concluded that the advance of money by plaintiff for media advertising for defendant's campaign was an expenditure by a corporation for a candidate for political office as prohibited by G.S. 163-278.19(a); and that the statute, so construed, is not violative of the North Carolina and United States Constitutions. Accordingly, judgment was entered for defendant on the plaintiff's claims, from which plaintiff appealed. The judgment was not dispositive of defendant's counterclaim.

*Akins, Harrell, Mann & Pike, by Bernard A. Harrell, for plaintiff appellant.*

*Tharrington, Smith & Hargrove, by Wade M. Smith, for defendant appellee.*

HEDRICK, Judge.

[1] In his first two assignments of error the plaintiff contends that the trial court erred in concluding on the basis of the pleadings that the plaintiff made a campaign contribution or expenditure in violation of the General Statutes of North Carolina. The statutes codified under Article 22A which regulate contributions and expenditures in political campaigns are of recent origin and have never been interpreted by the courts of this State. *See* G.S. 163-278.6—163-278.35 (1976), G.S. 163-278.36 (Supp. 1977). General Statute 163-278.19 reads in pertinent part as follows:

> *Violations by corporations, business entities, labor unions, professional associations and insurance companies.* — (a) Except as provided in G.S. 163-278.19(b), it shall be unlawful for any corporation, business entity, labor union, professional association or insurance company directly or indirectly:
>
> > (1) To make any contribution or expenditure . . . in aid or in behalf of or in opposition to any candidate or political committee in any election or for any political purpose whatsoever; . . . .

The term "contribution" as used in this statute is defined as "any *advance*, conveyance, deposit, distribution, transfer of funds, loan, payment, gift, pledge or subscription of money or anything of value whatsoever." G.S. 163-278.6(6) (emphasis added). The term "expenditure" is similarly defined as "any purchase, *advance*, conveyance, deposit, distribution, transfer of funds, loan, payment, gift, pledge or subscription of money or anything of value whatsoever." G.S. 163-278.6(9) (emphasis added). Thus, the advance of money or anything of value to a political candidate by a corporation, labor union or business entity constitutes an illegal contribution or expenditure within the meaning of this statute. The question presented in this case is whether the payments of money made by the plaintiff for media advertising in conjunction with defendant's campaign constitute "advances" as prohibited by the foregoing statutes.

In the pleadings as summarized and quoted above plaintiff described its own acts in the allegations that "plaintiff, in the defendant's behalf, and in reliance upon the assurance of payment, advanced money for the purchase of media advertising for defendant's campaign"; and "[t]hat the plaintiff corporate . . . paid

for the cost of some advertising pending the receipt by the committee of campaign funds." Plaintiff in its brief recognizes that the inartful wording of its pleadings would seem to bring its conduct within the statutory prohibition but argues that the "overall sense" of the pleadings is to the contrary.

In ascertaining the meaning of the words in a particular statute the courts should keep one eye to the common definition of the word and one eye to the purposes of the statute and the evil to be remedied. *Montague Brothers v. Shepherd Co.*, 231 N.C. 551, 58 S.E. 2d 118 (1950). According to common usage, to "advance" money means "to furnish money for a specific purpose understood between the parties, the money or sum equivalent to be returned; furnishing money or goods for others in expectation of reimbursement." Blacks Law Dictionary 72 (rev. 4th ed. 1968).

[2] The purpose of the federal statute regulating campaign contributions and expenditures by corporations and labor unions, 2 U.S.C. § 441(b) (1976) (formerly 18 U.S.C. § 610), which is similar in its language and scope to our own statute, is to protect the populace from undue influence by corporations and labor unions, and to insure the responsiveness of elected officials to the public at large. *United States v. C.I.O.*, 335 U.S. 106, 92 L.Ed. 1849, 68 S.Ct. 1349 (1948); Annot., 24 A.L.R. Fed. 162 (1975). As we read G.S. 163-278.19, we perceive its purposes to be identical to those of its federal counterpart. Our Legislature, as well as Congress, has specified that the advance of money by a corporation in behalf of a political candidate is frustrative of these purposes.

[3] Thus, with the definition of "advance" and the presumed intent of our Legislature in the enactment of the campaign contribution regulations in mind, we conclude that the payments made by plaintiff constituted illegal expenditures within the meaning of G.S. 163-278.19(a). In its reply plaintiff alleged that it expended substantial sums of money for the purchase of media advertising for the defendant's campaign until the defendant's committee could raise sufficient funds to cover these expenses. It is precisely this type of activity which could encourage favored treatment by an official once he is elected. We think the Legislature intended to curb such acts in its enactment of G.S. 163-278.19 and its inclusion of "advance" within the definitions of contribution and expenditure.

Plaintiff argues that the statute, so construed, would prohibit all credit transactions between corporations and candidates for public office. Such an expansive interpretation of the statute is not justified by our conclusion in this case. We do not think that the plaintiff's expenditures in the present case were typical of the ordinary extension of credit to a client for services rendered. In this regard, we find particularly illuminating the plaintiff's allegation "[t]hat at all times, the defendant knew that media advertising had to be currently paid and was aware of the laws and regulations concerning media expenses." Implicit in this contention is the knowledge on the part of the plaintiff of the illegality of its payments; from such knowledge it is reasonable to infer that plaintiff was aware that in paying the defendant's expenses, it was going beyond the mere extension of credit.

Plaintiff also challenges the trial court's conclusion that "[t]he statute makes no distinction between the advertent and inadvertent advancement or expenditure of funds." This conclusion was apparently addressed to the plaintiff's claim in connection with the check which was submitted by the defendant and returned for lack of sufficient funds. The plaintiff's assessment of the trial court's ruling on this point appears in its brief as follows:

> What the trial court is really saying here is that if the candidate pays a firm for its services by check, and the check turns out bad, the obligation is then converted into an "inadvertent contribution" and thus falls within the prohibition of the statute.

We are in no position to determine the accuracy of the plaintiff's statement as to the trial judge's purpose in including the foregoing conclusion. However, we regard the worthless check as nothing more than an acknowledgment by the defendant that the plaintiff had advanced money in his behalf. Our analysis has focused on the acts of the plaintiff in advancing money for the purchase of media advertising for the defendant from July to October, 1974. The fact that the defendant recognized a "moral" obligation to the plaintiff on 28 October 1974 and attempted to satisfy it in part with a worthless check does not alter the complexion of plaintiff's prior illegal acts. And if the obligation itself is unenforceable then a check representative of such obligation cannot be made the basis of a claim. *Corbett v. Clute*, 137 N.C. 546, 50 S.E. 216 (1905).

[4]  Plaintiff next contends that the statute, G.S. 163-278.19, is unconstitutional as construed by the trial court. Plaintiff argues that the trial court's construction of the statute would permit an unconstitutional infringement upon its rights to contract and carry on a lawful business activity which are embodied in the due process clause of the United States Constitution, U.S. CONST. amend. XIV, amend. V; and the law of the land clause of the North Carolina Constitution, N.C. CONST. art. I, § 19.

Freedom to contract and engage in a lawful business activity are rights guaranteed by the state and federal constitutions. *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474 (1960); *Alford v. Insurance Co.*, 248 N.C. 224, 103 S.E. 2d 8 (1958). However, these rights are not absolute, and limitations thereon imposed by the Legislature are not violative of the constitutional provisions so long as they are reasonable in light of the purposes to be accomplished. *Morris v. Holshouser*, 220 N.C. 293, 17 S.E. 2d 115 (1941). Plaintiff argues that the statute in issue, as construed by the trial court, is arbitrary in its contravention of constitutional rights.

As previously stated, in order to prevent undue corporate and union influence on federal elections, Congress deemed it necessary to prohibit contributions and expenditures in behalf of political candidates from these sources. The federal courts have examined the encroachment on constitutional rights inherent in specific applications of the statute. The prohibition of direct contributions of money or advances of money by a corporation has been found reasonably related to a permissible State objective. *United States v. Chestnut*, 394 F. Supp. 581 (S.D. N.Y. 1975), *aff'd*, 533 F. 2d 40 (2d Cir. 1976). On the other hand, where the statute was construed to prohibit a national bank from making a fully secured loan to a political candidate, it was found to violate the fifth amendment by intruding into the normal course of business of the bank without sufficient relationship to the objective of the statute. *United States v. First National Bank of Cincinnati*, 329 F. Supp. 1251 (S.D. Ohio 1971).

Plaintiff's constitutional claims were premised on the assumption that the trial court's construction of G.S. 163-278.19 would bar all credit transactions between businesses and political candidates. Such a construction would raise constitutional questions of a different magnitude than those presented by our more

limited construction and might well involve an unreasonable in-
trusion on constitutional rights. In any event, the plaintiff's pay-
ment of the defendant's advertising expenses were clearly
advances as prohibited by the statute; and the prohibition thereof
constitutes only a minimal intrusion on plaintiff's constitutional
rights, and is clearly reasonable in light of the purposes to be ac-
complished by the statute. We hold that the statute on its face,
and as applied by the trial court, is constitutional.

[5]   The plaintiff in this case has sought to enforce an obligation
arising out of a transaction which we have found to be in violation
of G.S. 163-278.19. If this Court were to lend its aid and compel
the defendant to repay money advanced contrary to the statute,
the policy declared by the Legislature in the enactment of that
statute would be frustrated. Thus we will follow the advice of-
fered by our Supreme Court at an earlier time: "[W]hen the court
discovers that it is invoked to aid in enforcing an illegal transac-
tion, the court *ex mero motu* will withdraw its hand." *Cansler v.
Penland*, 125 N.C. 578, 581, 34 S.E. 683, 684 (1899). *See also
McArver v. Gerukos*, 265 N.C. 413, 144 S.E. 2d 277 (1965). The
plaintiff's acts, as reflected in the pleadings, preclude its recovery
in the courts of this State for money advanced in the amount of
$19,349.26.

However, what we have heretofore said relates only to the
plaintiff's claim for $19,349.26. We are unable to determine on the
basis of these pleadings whether plaintiff's claim for $2,902.39
based on "commissions" is barred as an illegal contribution or ex-
penditure to a political candidate pursuant to G.S. 163-278.19. The
pleadings do not establish whether the "commissions" were
earned by the plaintiff in connection with the illegal advancement
of $19,349.26. Since the pleadings do not reflect an insurmount-
able bar to plaintiff's claim of $2,902.39, this portion of the judg-
ment for defendant must be reversed. Furthermore, the judgment
for defendant from which the appeal was taken makes no disposi-
tion of defendant's counterclaim.

The result is: that portion of the judgment dismissing plain-
tiff's claim against the defendant for $19,349.26 is affirmed; that
portion of the judgment dismissing plaintiff's claim for commis-
sions of $2,902.39 is reversed and remanded to Superior Court for
further proceedings with respect to plaintiff's claim for $2,902.39
and defendant's counterclaim.

Affirmed in part.

Reversed and remanded in part.

Judges BRITT and WEBB concur.