IN THE MATTER OF: A DECLARATORY RULING BY THE NORTH CAROLINA COMMISSIONER OF INSURANCE REGARDING 11 N.C.A.C. 12.0319

No. COA98-927

(Filed 6 July 1999)

### 1. Insurance— anti-subrogation rule—statutory authority

The Commissioner of Insurance had authority under the statute prohibiting policy provisions less favorable to the insured or beneficiary than required by statutory provisions, N.C.G.S. § 58-50-15(a), to promulgate a rule prohibiting conventional subrogation provisions in life or accident and health insurance contracts. N.C.G.S. § 58-51-15.

### 2. Insurance— anti-subrogation rule—not delegation of legislative power

Statutory authorization of the Commissioner of Insurance to promulgate a rule prohibiting subrogation provisions in life or accident and health insurance forms did not amount to an unconstitutional delegation of legislative power to an administrative agency. N.C. Const. art. I, § 6; N.C. Const. art. II, § 1.

### 3. Insurance— anti-subrogation rule—liberty to contract

The anti-subrogation rule promulgated by the Commissioner of Insurance for life, accident and health insurance forms did not impermissibly interfere with the constitutional liberty of insurers to contract.

IN RE DECLARATORY RULING BY N.C. COMM'R OF INS.

[134 N.C. App. 22 (1999)]

## 4. Insurance— anti-subrogation rule—equal protection

The anti-subrogation rule promulgated by the Commissioner of Insurance for life, accident and health policies did not violate the equal protection clauses of the state or federal constitutions because of a prior superior court decision invalidating the rule with respect to one insurer. N.C. Const. art. I, § 19; U.S. Const. amend. XIV.

## 5. Collateral Estoppel and Res Judicata— insurance—anti-subrogation rule—ruling for one insurer

The Commissioner of Insurance was not collaterally estopped from enforcing the anti-subrogation rule against petitioner life, accident and health insurers following a judgment that the rule could not be enforced against one life, accident and health insurer since the prior judgment was expressly limited to the parties of that case; the prior case was settled post-judgment and was never appealed; petitioners are not in privity with the participants in the prior case; and application of offensive non-mutual collateral estoppel against the Commissioner of Insurance would thus be inappropriate. Even if collateral estoppel technically precluded the parties from relitigating issues decided by the superior court in the prior judgment, it would be inequitable to allow petitioners, even those with privity, to assert collateral estoppel in this case.

## 6. Constitutional Law— State—separation of powers—insurance—anti-subrogation rule

The Commissioner of Insurance did not violate the doctrine of separation of powers by enforcing an anti-subrogation rule against life, accident and health insurers after a superior court had invalidated that rule with respect to one insurer since there was no appellate ruling on the validity of the rule, and the Commissioner was not required to consider the superior court decision as the final judicial interpretation in any other applications of the rule.

Appeal by North Carolina Commissioner of Insurance from judgment entered 20 April 1998 by Judge Robert L. Farmer in Wake County Superior Court. Heard in the Court of Appeals 30 March 1999.

**IN RE DECLARATORY RULING BY N.C. COMM'R OF INS.**

[134 N.C. App. 22 (1999)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Lorinzo L. Joyner, Assistant Attorney Generals Francis J. Di Pasquantonio, Sue Y. Little and Ted R. Williams, for the State.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Michael E. Weddington and Deanna L. Davis, for appellee Employers Health Insurance Co.*

*Maupin, Taylor & Ellis, P.A., by M. Keith Kapp and Kevin W. Benedict, for appellees Blue Cross and Blue Shield of North Carolina.*

*Bailey & Dixon, L.L.P., by Alan J. Miles, amicus curiae, for North Carolina Association of Defense Attorneys.*

*Patterson, Harkavy & Lawrence, L.L.P., by Burton Craige, amicus curiae, for North Carolina Academy of Trial Lawyers.*

*Smith Helms Mulliss & Moore, L.L.P., by James G. Exum, Jr., and John J. Korzen, amicus curiae, for Citizens for Business and Industry, United HealthCare of North Carolina, Inc., Kaiser Foundation Health Plan of North Carolina, Fortis Provider Markets, Fortis Insurance Company, and Fortis Benefits Company.*

MARTIN, Judge.

On 26 September 1978 the North Carolina Department of Insurance (NCDOI) adopted a rule pursuant to the North Carolina Administrative Procedures Act (currently codified as N.C. Gen. Stat. § 150B), stating that "Life or accident and health insurance forms shall not contain a provision allowing subrogation of benefits." 11 N.C.A.C. 12.0319 (anti-subrogation rule). The validity of this rule is the subject of this dispute. Employers Health Insurance Company (Employers) and Blue Cross Blue Shield of North Carolina (BCBS) filed a joint petition on 15 October 1997 seeking a formal declaration regarding the enforceability of the 1978 anti-subrogation rule.

Known historically as the principle of substitution, the doctrine of subrogation allows a party who has compensated a creditor under the color of some obligation, to step into the shoes of the creditor, thereby succeeding to the creditor's rights to proceed against the debtor for reimbursement. *Journal Pub. Co. v. Barber,* 165 N.C. 478, 487-88, 81 S.E. 694, 698 (1914). When an insurer has compensated the

**IN RE DECLARATORY RULING BY N.C. COMM'R OF INS.**

[134 N.C. App. 22 (1999)]

insured for a loss according to the terms of an insurance policy, the insurer is subrogated to the rights of the insured with respect to any third party who may be liable for the loss covered by the policy. *Phoenix Ins. Co. of Brooklyn v. Erie & Western Transp. Co.*, 117 U.S. 312, 29 L.Ed. 873 (1886); *Fidelity Insurance Co. v. Atlantic Coast Line Railroad Co.*, 165 N.C. 136, 80 S.E. 1069 (1914).

In a declaratory ruling of 29 December 1997, the Commissioner upheld the anti-subrogation rule. The superior court reversed the Commissioner's ruling but stayed the judgment pending final appellate determination. NCDOI appeals.

Appellate review of a judgment of the superior court entered upon review of an administrative agency decision requires that the appellate court determine whether the superior court utilized the appropriate scope of review and, if so, whether the superior court did so correctly. *Act-Up Triangle v. Com'n for Health Serv.*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997) (citing *Amanini v. North Carolina Dept. of Human Resources*, 114 N.C. App. 668, 443 S.E.2d 114 (1994)). The nature of the error asserted by the party seeking review dictates the appropriate manner of review: if the appellant contends the agency's decision was affected by a legal error, G.S. § 150B-51(1)(2)(3)&(4), *de novo* review is required; if the appellant contends the agency decision was not supported by the evidence, G.S. § 150B-51(5), or was arbitrary or capricious, G.S. § 150B-51(6), the whole record test is utilized. *In re Appeal by McCrary*, 112 N.C. App. 161, 435 S.E.2d 359 (1993).

In this case, petitioners' claim and respondent's assignments of error both address the legal efficacy of the anti-subrogation rule, 11 N.C.A.C. 12.0319; thus the appropriate standard of review for the superior court and this Court is *de novo* review. *Id.* It makes no difference that a declaratory ruling, rather than a contested case, is now before us. N.C. Gen. Stat. § 150B-4 (1995) ("A declaratory ruling is subject to judicial review in the same manner as an order in a contested case."). Accordingly, we consider *de novo* whether the Commissioner erred in upholding the anti-subrogation rule adopted by the NCDOI.

<u>Respondent's Appeal</u>

The superior court concluded that NCDOI exceeded its statutory authority and violated the United States Constitution when it promulgated the anti-subrogation rule. With respect to the question of

statutory authority, NCDOI contends the superior court erred when it concluded promulgation of the anti-subrogation rule (1) exceeded the statutory authority of the NCDOI, (2) effectively changed North Carolina substantive law allowing legal subrogation, and (3) amounted to an unconstitutional delegation of legislative powers. The Commissioner also takes issue with the superior court's conclusion that: (4) adoption of the rule impermissibly interfered with petitioners' constitutional freedom of contract, and (5) application of the rule to prohibit subrogation clauses in the policies of fewer than all health and accident insurers in this State violated Constitutional guarantees of equal protection under the law. For the following reasons we reverse the judgment of the superior court.

## I.  Statutory Authority

[1] The power of the Commissioner of Insurance is limited by statute. As stated in *State ex rel. Com'r of Ins. v. North Carolina Auto. Rate Administrative Office,*

> While the Office of Commissioner of Insurance is created by Article III, sec. 7(1) of the North Carolina Constitution, section 7(2) of that Article says his duties shall be prescribed By law. Hence, the power and authority of the Commissioner emanate from the General Assembly and are limited by legislative prescription.

287 N.C. 192, 202, 214 S.E.2d 98, 104 (1975), *appeal after remand,* 30 N.C. App. 427, 227 S.E.2d 603 (1976), *reh'g granted, opinion vacated by,* 292 N.C. 1, 231 S.E.2d 867 (1977); *State ex rel. Com'r of Ins. v. North Carolina Rate Bureau,* 300 N.C. 381, 398, 269 S.E.2d 547, 561, *reh'g denied,* 301 N.C. 107, 273 S.E.2d 300 (1980) (hereinafter *Rate Bureau*); *Mullins v. North Carolina Criminal Justice Educ. and Training Standards Com'n,* 125 N.C. App. 339, 481 S.E.2d 297 (1997). In addition to express powers, administrative agencies have implied powers reasonably necessary for the proper execution of their express purposes. *Mullins* at 344, 481 S.E.2d at 300; *State ex rel. Com'r of Ins. v. Integon Life Ins. Co.,* 28 N.C. App. 7, 10, 220 S.E.2d 409, 411-12 (1975). Absent express authority or an implied power reasonably necessary for proper administrative functions, "[a]n administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." *Integon Life Ins. Co.* at 11, 220 S.E.2d at 412. However, just because an asserted power is "novel and unprecedented" does not necessarily mean the action exceeds

statutory authority. *Rate Bureau* at 401, 269 S.E.2d at 562 (citing *United States v. Morton Salt Company*, 338 U.S. 632, 94 L.Ed. 401 (1950)). Despite the "novel and unprecedented" aspects of the anti-subrogation rule, we must determine whether the NCDOI was given express or implied authority to promulgate 11 N.C.A.C. 12.0319.

"An issue as to the existence of power or authority in a particular administrative agency is one primarily of statutory construction." *Rate Bureau* at 399, 269 S.E.2d at 561; *Mullins, supra.*

> In construing the laws creating and empowering administrative agencies, as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished. The best indicia of that legislative purpose are "the language of the statute, the spirit of the act, and what the act seeks to accomplish."

*Rate Bureau* at 399, 269 S.E.2d at 561 (citations omitted); *Mullins, supra.* Rules of statutory construction apply, and so statutes *in pari materia,* and all parts thereof, should be construed together and compared with each other. *Rate Bureau* at 399-400, 269 S.E.2d at 561; *Redevelopment Commission v. Security National Bank of Greensboro*, 252 N.C. 595, 114 S.E.2d 688 (1960). "Such statutes should be reconciled with each other when possible, and any irreconcilable ambiguity should be resolved so as to effectuate the true legislative intent." *Rate Bureau* at 400, 269 S.E.2d at 561; *Duncan v. Carpenter*, 233 N.C. 422, 64 S.E.2d 410 (1951).

A review of the statutory insurance regulatory scheme reveals a legislative intent to grant the Commissioner broad authority to review insurance forms and restrict those provisions less favorable to the consumer, i.e., the insured or beneficiary, than required by statutory provisions.

The Commissioner is given the authority to require filing and approve insurance policies. N.C. Gen. Stat. § 58-51-1 (filing and approval authority over sickness and accident insurance forms prior to use); N.C. Gen. Stat. § 58-51-85 (filing and approval authority over policies of group or accident and health insurance prior to use); N.C. Gen. Stat. § 58-51-95 (filing and approval authority over forms and rates for individual sickness or bodily injury or death by accident policies prior to use); N.C. Gen. Stat. § 58-67-50 (filing and approval authority over evidences of coverage, amendments issued by HMOs

prior to use). However, these statutes do not provide express authority to exclude substantive provisions, absent some other authority within the insurance statutes.

G.S. § 58-2-40 (Powers and Duties of Commissioner) states that the Commissioner shall:

> (1) See that all laws of this State that the Commissioner is responsible for administering and the provisions of this Chapter are faithfully executed; and to that end the Commissioner is authorized to adopt rules in accordance with Chapter 150B of the General Statutes, in order to enforce, carry out and make effective the provisions of those laws.

N.C. Gen Stat. § 58-2-40(1) (1994). In particular,

> [t]he Commissioner is also authorized to adopt such further rules not contrary to those laws that will prevent persons subject to the Commissioner's regulatory authority from engaging in practices injurious to the public.

*Id.* Thus, in addition to the enforcement of express statutory provisions protecting the public, the Commissioner is authorized to adopt "further rules" to prevent insurers from "engaging in practice injurious to the public." *Id.* The Commissioner argues that this statute provides express and/or implied authority to limit subrogation provisions, as they are "injurious to the public."

G.S. § 58-2-40 (formerly G.S. 58-9(1)), has been interpreted to place a duty upon the Commissioner to administer the insurance laws of the State, and does not confer any other express powers or duties. *Charlotte Liberty Mut. Ins. Co. v. State ex rel. Lanier*, 16 N.C. App. 381, 384, 192 S.E.2d 57, 59 (1972) ("The Commissioner of Insurance of North Carolina is charged with the duty under G.S. § 58-9 with administering the laws of the State with regard to the insurance industry. Specific powers and duties are statutorily conferred upon the Commissioner to aid him in the administration of the insurance laws."). Standing alone, G.S. § 58-2-40 does not contain an express or implied grant of power to limit subrogation provisions. *See Integon Life Ins. Co.*, 28 N.C. App. at 11, 220 S.E.2d at 412 ("Clearly, G.S. 58-9(1) contains no express grant of authority to set rates and it is not such an implied power as is 'reasonably necessary for (the Commissioner's) proper functioning.' "). Therefore some other statutory provision must provide a specific basis for authority,

before the Commissioner has the authority to promulgate "further rules" restricting "practices injurious to the public." N.C. Gen. Stat. § 58-2-40.

Regarding health and accident insurance policies, G.S. § 58-51-15 sets out required and prohibited policy provisions. G.S. § 58-51-15(a) states twelve specific provisions that must be found in every health and accident insurance policy. Prohibited provisions are regulated in G.S. § 58-51-15(b) which precludes eleven different substantive contractual provisions in health and accident policies, unless those policies adopt the language and wording of the statute. Subrogation rights are neither required nor prohibited by the statute on health and accident insurance policies; however, G.S. § 58-50-15(a) provides that:

> No policy provision which is not subject to G.S. 58-51-15 shall make a policy, or any portion thereof, less favorable in any respect to the insured or the beneficiary than the provisions thereof which are subject to Articles 50 through 55 of this Chapter.

N.C. Gen. Stat. § 58-50-15(a) (1994). This statutory provision gives the Commissioner a broad latitude and flexibility in evaluating other provisions in insurance policies.

Citing *Durrett v. Bryan*, 14 Kan.App.2d 723, 729, 799 P.2d 110, 115 (1990), as persuasive authority, the Commissioner argues that "a subrogation provision, by having the effect of reducing the benefits ultimately received by a policyholder, would be a less favorable provision, and so prohibited by KSA 40-2204(A)." Interpreting statutory provisions almost identical to G.S. §§ 58-51-15 and 58-50-15, the Kansas Court of Appeals found that "a subrogation clause is a provision less favorable to the insured than those provisions delineated in" the Kansas equivalent to G.S. § 58-51-15. *Id.* at 729, 799 P.2d at 115-16. That Court concluded that these statutes provide "adequate statutory authority for the promulgation of" the anti-subrogation rule. *Id.* at 729, 799 P.2d at 116. We agree with the reasoning of the Kansas Court that subrogation provisions are certainly "less favorable in any respect to the insured or the beneficiary" than those required by G.S. § 58-51-15, because subrogation inevitably reduces the potential amount of compensation received by the insured. Thus the statutory scope of the Commissioner's authority allows the prohibition of subrogation provisions in insurance contracts.

Given these legislative pronouncements we conclude that "the language of the statute, the spirit of the act, and what the act seeks to accomplish," all demonstrate a legislative intent to grant the Commissioner of Insurance broad authority to limit insurance policy provisions, like subrogation, that are less favorable to the insured than those specifically addressed by G.S. § 58-51-15. *Cf. Rate Bureau* at 399, 269 S.E.2d at 561.

Nevertheless, the superior court held that promulgation of the anti-subrogation rule exceeded the Commissioner's authority by altering or adding to the substantive common law allowing for subrogation. Petitioners cite *State ex rel. Com'r of Ins. v. Integon Life Ins. Co.*, 28 N.C. App. 7, 11, 220 S.E.2d 409, 412 (1975), for the proposition that "[a]n administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law." Because the anti-subrogation rule prohibits subrogation provisions in accident and health insurance forms, petitioners contend that the rule is an unauthorized restriction on all forms of subrogation, contractual or equitable.

Where an agency has the authority to act, its rules and regulations have the binding effect of statutes and may accordingly alter the common law. *Taylor v. Superior Motor Co.*, 227 N.C. 365, 367, 42 S.E.2d 460, 461 (1947) (noting that "proper regulations authorized under the Act have the binding effect of law," because such regulations "are the tools used to effectuate the policy and purposes of the Act."). As discussed above, NCDOI had the authority to limit contractual provisions providing subrogation rights to insurers. The Commissioner is charged with enforcing the laws governing insurance *contracts*. N.C. Gen. Stat. § 58-2-40 (Powers and Duties of Commissioner to enforce insurance laws); N.C. Gen. Stat. § 58-1-10 ("A contract of insurance is an agreement by which the insurer is bound to pay money or its equivalent or to do some act of value to the insured upon, and as an indemnity or reimbursement for the destruction, loss, or injury of something in which the other party has an interest.") Therefore, to the extent the anti-subrogation rule limited contractual rights, it was promulgated within the authority of the agency and has the binding effect of law. The question is whether the scope of the anti-subrogation rule exceeded the authority delegated by the legislature, and purported to limit rights arising outside contracts. A review of the anti-subrogation rule in the context of the general law of subrogation reveals that the rule is limited to contractual (or conventional) subrogation.

IN RE DECLARATORY RULING BY N.C. COMM'R OF INS.

[134 N.C. App. 22 (1999)]

Subrogation rights are categorized as "either the right of conventional subrogation—that is, subrogation by agreement between the insurer and the insured—or the right of equitable subrogation, by operation of law, upon the payment of the loss." *Milwaukee Ins. Co. v. McLean Trucking Co.*, 256 N.C. 721, 726, 125 S.E.2d 25, 29 (1962). Conventional subrogation arises from an express contract between the payer and creditor (or debtor), that the payer will be subrogated to the rights of the payee. *Journal Pub. Co. v. Barber*, 165 N.C. 478, 488, 81 S.E. 694, 698-99 (1914) ("Conventional subrogation or subrogation by act of parties may take place by the debtor's agreement that one paying a claim shall stand in the creditor's shoes; and furthermore can arise only by reason of an express or implied agreement between the payer and either the debtor or the creditor, and the agreement, like other agreements, must be supported by a consideration."); *Grantham v. Nunn*, 187 N.C. 394, 121 S.E. 662 (1924).

Equitable subrogation is "a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it" and "arises when one person has been compelled to pay a debt which ought to have been paid by another and for which the other was primarily liable." *Beam v. Wright*, 224 N.C. 677, 683, 32 S.E.2d 213, 218 (1944); *Lyon & Sons, Inc. v. N.C. State Bd. of Educ., et al.*, 238 N.C. 24, 32, 76 S.E.2d 553, 559 (1953); *Harris-Teeter Super Markets, Inc. v. Watts*, 97 N.C. App. 101, 103, 387 S.E.2d 203, 205 (1990). "It is sufficient to invoke the doctrine of subrogation if (1) the obligation of another is paid; (2) 'for the purpose of protecting some real or supposed right or interest of his own.' " *Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co.*, 277 N.C. 216, 222, 176 S.E.2d 751, 756 (1970) (citations omitted); *North Carolina Ins. Guar. Ass'n v. Century Indem. Co.*, 115 N.C. App. 175, 188, 444 S.E.2d 464, 472, *disc. review denied*, 337 N.C. 696, 448 S.E.2d 532 (1994) (hereinafter *NCIGA*). Even where there is no express subrogation agreement in an insurance contract, equitable subrogation rights may arise by operation of law. *Smith v. Pate*, 246 N.C. 63, 67, 97 S.E.2d 457, 460 (1957) ("Where an insurance company, pursuant to the terms of its contract of insurance, indemnifies the insured for loss resulting from a wrongful act of a third person, it is by operation of law subrogated to the extent of such payment to the rights of its insured against the tortfeasor."); *Standard Acc. Ins. Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288 (1954) ("The right does not arise out of contract but rather exists without the consent of the insured. [A]lthough of course the parties may by agreement waive or limit the right."). Also, equitable subrogation rights have been recognized in the context of recovering pay-

ments for medical benefits, as in uninsured motorists automobile insurance policies. *Moore v. Beacon Ins. Co.*, 54 N.C. App. 669, 670, 284 S.E.2d 136, 138, *disc. review denied*, 305 N.C. 301, 291 S.E.2d 150 (1981) ("It is well-settled in North Carolina that an insurer is subrogated to its insured's rights to recover medical expenses resulting from injuries inflicted by a tortfeasor when the insurer has paid such medical expenses pursuant to a medical payments provision in the [automobile] insurance policy.")

The anti-subrogation rule itself only applies to subrogation as it appears in insurance forms, i.e., conventional subrogation by agreement. 11 N.C.A.C. 12.0319 states that "[l]ife or accident and health insurance forms shall not contain a provision allowing subrogation of benefits." We conclude that the Commissioner did not exceed the statutory authority granted by the General Assembly when promulgating the rule prohibiting subrogation provisions in life or accident and health insurance contracts. The superior court's conclusion that the NCDOI exceeded its authority in limiting contractual subrogation is accordingly overruled. The question of whether equitable subrogation rights might also arise in the context of life or accident and health insurance coverage is not before us and, therefore, we do not address that question. *See NCGIA* at 190-91, 444 S.E.2d at 473 (Even where the General Assembly has expressly excluded contractual subrogation claims, this Court has held that the General Assembly did not also intend to restrict equitable subrogation rights.).

[2] The superior court also held that even if the General Assembly had intended to authorize the Commissioner to restrict insurance provisions like subrogation, such authorization amounted to an invalid and unconstitutional delegation of legislative power to an administrative agency. We disagree.

The North Carolina Supreme Court has interpreted Article I, section 6 of the North Carolina Constitution (separation of power) and Article II, section 1 of the Constitution (vesting legislative power in General Assembly) to mean that "the legislature may not abdicate its power to make laws or delegate its supreme legislative power to any coordinate branch or to any agency which it may create." *Adams v. North Carolina Dept. of Natural and Economic Resources*, 295 N.C. 683, 696, 249 S.E.2d 402, 410 (1978) (citing *North Carolina Turnpike Authority v. Pine Island, Inc.*, 265 N.C. 109, 143 S.E.2d 319 (1965)). Recognizing the complexity of the modern legislative process, the Court concluded that "strict adherence to ideal notions of the non-

delegation doctrine would unduly hamper the General Assembly in the exercise of its constitutionally vested powers;" therefore, "the constitutional inhibition against delegating legislative authority does not preclude the legislature from transferring adjudicative and rule-making powers to administrative bodies provided such transfers are accompanied by adequate guiding standards to govern the exercise of the delegated powers." *Id.* at 697, 249 S.E.2d at 410.

When evaluating what constitutes "adequate guiding standards" in the "exercise of delegated powers," the court has stated that "such declarations need be only as specific as the circumstances permit." *Bring v. North Carolina State Bar,* 348 N.C. 655, 658, 501 S.E.2d 907, 909, *reh'g denied,* 349 N.C. 242, 514 S.E.2d 271 (1998) (quoting *Adams v. North Carolina Dept. of Natural and Economic Resources,* 295 N.C. 683, 249 S.E.2d 402 (1978)).

> When there is an obvious need for expertise in the achievement of legislative goals the General Assembly is not required to lay down a detailed agenda covering every conceivable problem which might arise in the implementation of the legislation. It is enough if general policies and standards have been articulated which are sufficient to provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances.

*Id.* In addition, the existence of adequate procedural safeguards supports the constitutionality of the delegated power and tends to "insure that the decision-making by the agency is not arbitrary and unreasoned." *Id.* ("Procedural safeguards tend to encourage adherence to legislative standards by the agency to which power has been delegated.").

The statutory provisions, G.S. §§ 58-2-40, 58-51-15, 58-50-15, granting and guiding the Commissioner's authority in health and accident insurance policies, articulate "general policies and standards" which sufficiently "provide direction to an administrative body possessing the expertise to adapt the legislative goals to varying circumstances." *Bring* at 568, 501 S.E.2d at 909. Also, judicial review of the Commissioner's declaratory ruling and specific application of the rule in contested cases under the North Carolina Administrative Procedures Act (G.S. § 150B), offer adequate procedural safeguards tending to "encourage adherence to legislative standards" and also demonstrate the constitutionality of the legislative delegation of power to the Commissioner.

We therefore conclude that the Commissioner was within the statutory and constitutional powers delegated by the General Assembly when adopting the anti-subrogation rule, 11 N.C.A.C. 12.0319.

## II. Constitutional Violations

The superior court also concluded that: (A) adoption of the anti-subrogation rule impermissibly interfered with petitioners' constitutional freedom of contract, and (B) application of the rule to prohibit subrogation provisions in the policies of some, but not all, insurers violated Constitutional guarantees of equal protection under the law. We disagree and reverse the superior court on these issues as well.

### A.

[3] Promulgation of the anti-subrogation rule does not interfere with petitioner's constitutional right to contract. The right to contract is a property right protected by our State Constitution and the Fourteenth Amendment to the United States Constitution. *Alford v. Textile Insurance Co.*, 248 N.C. 224, 227, 103 S.E.2d 8, 10-11 (1958); *Morris v. Holshouser*, 220 N.C. 293, 17 S.E.2d 115 (1941); *Mark IV Beverage, Inc. v. Molson Breweries USA, Inc.*, 129 N.C. App. 476, 500 S.E.2d 439, *disc. review denied*, 349 N.C. 360, 515 S.E.2d 705 (1998); *Louchheim, Eng & People, Inc. v. Carson*, 35 N.C. App. 299, 241 S.E.2d 401 (1978). However, this right is qualified by the power of the legislature to supervise economic relations, providing restrictive safeguards and reasonable regulations. *Morris, supra; Mark IV Beverage, Inc., supra; Louchheim, supra*. Limitations on the right to contract are constitutional "so long as they are reasonable in light of the purposes to be accomplished." *Louchheim* at 306, 241 S.E.2d at 405-06 (citing *Morris v. Holshouser, supra*).

> The test for determining the constitutionality of a statute under the law of the land is whether the legislature has employed reasonable means to effect a proper governmental purpose. . . . The due process inquiry is whether "the state measure bear[s] a rational relation to a constitutionally permissible objective."

*Mark IV Beverage, Inc.*, 129 N.C. App. at 486-87, 500 S.E.2d at 446 (citations omitted). "It has been long established that the insurance business is charged with a public interest, and that its regulation is constitutional." *Rate Bureau* at 386, 269 S.E.2d at 555 (citing *German Alliance Insurance Co. v. Lewis*, 233 U.S. 389, 58 L.Ed. 1011 (1914)).

Here, the anti-subrogation rule is a reasonable means to accomplish a proper governmental purpose. Restricting conventional subrogation provisions in insurance policies increases the amount of potential recovery for the insured public. Thus the superior court erred when concluding that the anti-subrogation rule impermissibly interfered with the constitutional liberty to contract.

B.

[4] The superior court also concluded

> [t]he application of 11 NCAC 12.0319 to prohibit subrogation provisions in the accident and health policies of some, but not all, similarly situated insurers, including Employers Health and Blue Cross, contravenes the constitutional guarantees of equal protection of the laws found in Article I, Section 19 of the North Carolina Constitution and Amendment XIV of the United States Constitution.

The conclusion was engendered by the court's finding that in 1983, Pilot Life Insurance Company (Pilot Life) had sought judicial review of the anti-subrogation rule. In the 1983 action, the Superior Court of Wake County entered a judgment on 12 July 1984 in which it declared the rule null and void "to the extent it attempts to prohibit Pilot's exercise of its rights to be subrogated . . .," and permanently restrained NCDOI from enforcing the rule against Pilot Life. *Pilot Life Insurance Company v. Ingram*, Wake County case number 83 CVS 6671. The Commissioner interpreted the judgment as applying only to Pilot Life, did not appeal, and continued to enforce the anti-subrogation rule against all other North Carolina commercial accident and health insurers.

"State economic regulatory classifications such as this involve no suspect classification or fundamental freedom and receive only 'reasonable scrutiny.' " *American Nat. Ins. Co. v. Ingram*, 63 N.C. App. 38, 46, 303 S.E.2d 649, 654, *cert. denied*, 309 N.C. 819, 310 S.E.2d 348 (1983) (citing *Hughes v. Alexandria Scrap Corporation*, 426 U.S. 794, 49 L.Ed.2d 220 (1976)).

> Legislation subject only to reasonable scrutiny, even though it may cause some disparate treatment among similarly situated businesses, will not be held violative of the Equal Protection or Due Process Clauses of the Fourteenth Amendment if it bears a "rational relationship to a permissible state objective." Such legislation need not be the best resolution of a particular problem. It

can, in fact, be seriously flawed and result in substantial inequality and still remain constitutional if it has some reasonable basis. It will not be set aside if "any state of facts reasonable may be conceived to justify it." [citations omitted.]

*Ingram* at 46-47, 303 S.E.2d at 654 (quoting *Prudential Property and Casualty Co. v. Ins. Commission, et al.*, 534 F.Supp. 571, 576 (C.D.S.C. 1982), *affirmed*, 699 F.2d 690 (4th Cir. 1983)).

Reviewing application of the anti-subrogation rule under this level of scrutiny, we conclude there is no equal protection violation. The anti-subrogation rule serves a legitimate purpose, and the existence of the prior superior court decision invalidating the rule with respect to Pilot Life alone constitutes a rational basis for NCDOI's disparate treatment of the similarly situated insurers.

Petitioners argue that a stricter level of scrutiny should be applied because the Commissioner's application of a facially neutral rule intentionally and purposefully discriminated against insurers other than Pilot Life. Relying upon *S. S. Kresge Co. v. Davis*, 277 N.C. 654, 661, 178 S.E.2d 382, 386 (1971), petitioners contend that " '[t]hough the law itself be fair on its face, and impartial in appearance, yet, if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution.' " (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 30 L.Ed 220 (1886)). However, to evoke a greater level of scrutiny under the equal protection clause, the discrimination at issue must involve a suspect class such as race or national origin. *Hughes v. Alexandria Scrap Corporation*, 426 U.S. 794, 49 L.Ed.2d 220 (1976); *Ingram*, 63 N.C. App. 38, 303 S.E.2d 649; Sheila Foster, Intent and Incoherence, 72 Tul. L. Rev. 1065 (1998). "A statute, otherwise neutral on its face, must not be applied so as invidiously to discriminate on the basis of race." *Washington v. Davis*, 426 U.S. 229, 241, 48 L.Ed.2d 597, 608 (1976) (citing *Yick Wo v. Hopkins*, 118 U.S. 356, 30 L.Ed. 220 (1886)).

The differential treatment in this case involves no suspect class, and so stricter scrutiny is not appropriate. *Id.* The 1983 Pilot Life judgment provides a rational basis for NCDOI's differential treatment, and therefore NCDOI's application of the rule to insurers other than Pilot Life does not violate the constitutional guarantee of equal protection under the law.

## Petitioners' Cross-Assignments of Error

Petitioners Employers and BCBS argue two cross-assignments of error. N.C.R. App. P. 10(d) permits an appellee, without taking an appeal, to cross-assign as error an act or omission of the trial court which deprives the appellee of an alternative legal ground for supporting the judgment in their favor. *Carawan v. Tate*, 304 N.C. 696, 286 S.E.2d 99 (1982); *Leonard v. Lowes*, 131 N.C. App. 304, 506 S.E.2d 291 (1998). We have considered petitioners' arguments in the alternative, reject them, and overrule their cross-assignments of error.

**[5]** First, petitioners argue that the superior court's decision is supported by the doctrine of issue preclusion. Under the principles of issue preclusion, petitioners claim the Commissioner is estopped from enforcing the anti-subrogation rule against other insurers following the Pilot Life judgment. We disagree.

The Pilot Life judgment was expressly limited to the parties of that case. Moreover, the case was settled post-judgment, and was never appealed. Petitioners are not in privity with the participants in the Pilot Life dispute, and seek to use that decision offensively against the agency. Under such circumstances we do not believe that the application of offensive non-mutual collateral estoppel against the state agency would be appropriate. *See c.f., Rymer v. Estate of Sorrells*, 127 N.C. App. 266, 270, 488 S.E.2d 838, 841 (1997). However, even if the principles of collateral estoppel technically precluded the parties from relitigating the issues decided by the superior court in Pilot Life, "it would be inequitable to allow petitioners, even those with privity, to assert the doctrine in this case." *Tar Landing Villas Owners' Ass'n v. Town of Atlantic Beach*, 64 N.C. App. 239, 243, 307 S.E.2d 181, 185, *disc. review denied*, 310 N.C. 156, 311 S.E.2d 296 (1983).

> When the issue, however, as in this case, involves the scope and formulation of a law never before addressed by an appellate court in this State, we believe that our duty to develop the law outweighs the resulting burden on petitioners.

*Id.* at 244, 307 S.E.2d at 185. We decline to apply the doctrine of collateral estoppel to this appeal.

**[6]** Second, petitioners argue that the doctrine of separation of powers "requires administrative agencies to follow the law of the . . . courts [which have] jurisdiction over the cause of action." *Thomas v. North Carolina Dept. of Human Resources*, 124 N.C. App. 698, 709,

478 S.E.2d 816, 823 (1996), *affirmed,* 346 N.C. 268, 485 S.E.2d 295 (1997). They contend the Commissioner violated the separation of powers doctrine when enforcing the anti-subrogation rule, after a superior court had invalidated that rule with respect to *Pilot Life.* We disagree. Petitioners' interpretation of *Thomas* is too broad. The holding in *Thomas* applies only to decisions of appellate courts.

> It is well-established that when an appellate court of this State determines that a statute enacted by the General Assembly is facially unconstitutional, that statute may not be subsequently enforced against any citizen or entity. An order of this Court proclaiming a statute unconstitutional applies not only to the named litigants, it voids the statute entirely as if it no longer existed. Once a statute is determined to be unconstitutional, no private citizen or division of the State may take any further action pursuant to the provisions of that unconstitutional statute.

*Id.* at 709-10, 478 S.E.2d at 823. Explaining the great deference ordinarily due administrative interpretations of statutes, the *Thomas* Court stated that "[d]eference is inappropriate where, by attempting to arrogate to itself the distinct duties of the judiciary in having *the final word* in interpreting statutes." *Id.* at 708, 478 S.E.2d at 822 (emphasis added).

In the present case, the judgment of the superior court in Pilot Life did not constitute the "final word" in interpreting the anti-subrogation rule; rather, that decision was expressly limited to the parties involved in the dispute. Absent an appellate ruling on the validity of the rule, the agency did not violate the separation of powers by attempting "to arrogate to itself the distinct duties of the judiciary." *Id.* The doctrine of separation of powers does not require the Commissioner to consider the *Pilot Life* decision as the final judicial interpretation of the anti-subrogation rule in any other applications of the rule. This assignment of error is overruled.

Accordingly we hold that the Commissioner had authority to promulgate and enforce the anti-subrogation rule; the decision of the superior court is reversed.

Reversed.

Judges GREENE and McGEE concur.