STATE OF NORTH CAROLINA v. NORMAN BECKHAM, JR.

No. COA00-1494

(Filed 15 January 2002)

**1. Constitutional Law— double jeopardy—misdemeanor larceny—civil versus criminal penalty**

The trial court did not err by denying defendant's motion to dismiss the charge of misdemeanor larceny on double jeopardy grounds even though defendant paid money to the merchant owner of the property in response to a demand made under N.C.G.S. § 1-538.2, because: (1) the effect of N.C.G.S. § 1-538.2 does not transform what was intended as a civil remedy into a criminal penalty; (2) the mere presence of a deterrent quality is insufficient to render a sanction criminal; and (3) the sanction allowed by N.C.G.S. § 1-538.2 is not excessive in relation to the remedial purpose since the damages are limited to between $150 and $1,000, and the statute's purpose is to restore to the victims of theft, embezzlement, and fraud the value of their loss caused by the misconduct of others.

**2. Constitutional Law— excessive fines clause—misdemeanor larceny—qui tam actions**

The trial court did not err by denying defendant's motion to dismiss the charge of misdemeanor larceny even though defendant argues the extra $50 he paid to the merchant owner of the property in response to a demand made under N.C.G.S. § 1-538.2 is an excessive fine under the Eighth Amendment, because: (1) neither the government nor a specified public institution received any portion of the amount paid by defendant to the merchant owner; and (2) no action was prosecuted by the merchant owner since defendant voluntarily paid in response to the demand letter, and thus, there was no qui tam action.

Appeal by defendant from judgment entered 11 August 2000 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 November 2001.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Roberta Ouellette, for the State.*

*Public Defender Isabel Scott Day, by Assistant Public Defender Dean P. Loven, for defendant-appellant.*

MARTIN, Judge.

Defendant appeals from a judgment entered upon his conviction of misdemeanor larceny. The record discloses that defendant was convicted of misdemeanor larceny in the district court and appealed to the superior court. He moved, in superior court, to dismiss the charge on double jeopardy grounds, based upon his payment to the owner of the stolen property, The Sports Authority, of the sum of $200.00 in response to a demand made pursuant to G.S. § 1-538.2. The trial court denied the motion after concluding that G.S. § 1-538.2 provided for a civil remedy rather than a criminal penalty.

The State's evidence at trial tended to show that defendant was employed by The Sports Authority in Charlotte, North Carolina in March 1999. On the evening of 23 March 1999, defendant left the store at the end of his work period carrying a Sports Authority shopping bag that contained a pair of Nike Air Tail Wind shoes worth approximately $119.99. The store's loss prevention manager, Samuel Grier, asked defendant to produce a receipt for proof of purchase, in accordance with established store policy. In response, defendant told Grier that he had left the receipt at home. Although the store policy was not to allow an employee to leave with store merchandise unless a receipt was produced, Grier allowed defendant to leave the store with the shoes since it was so late in the evening. Grier planned to investigate the matter the following day.

The next day, Grier checked defendant's purchase records and determined that defendant had not purchased the shoes in question. Grier also reviewed the inventory records of the store which revealed that the store was missing a pair of Nike Air Tail Wind shoes. Grier and his supervisor subsequently confronted defendant about the shoes. Defendant told them that he had taken the shoes for a friend.

Defendant offered no evidence.

[1] Defendant's sole contention on appeal is that the trial court erred in denying his motion to dismiss the criminal charge on double jeopardy grounds. His argument is based upon the letter from an attorney for The Sports Authority demanding payment of $200.00, pursuant to G.S. § 1-538.2, and his payment in response thereto. He contends that the demand exceeded by $50.00 the restitution authorized by the statute, and that his payment of the additional $50.00 constituted a punishment and should be considered an excessive fine under the

Eighth Amendment to the United States Constitution. In addition, defendant maintains that the statute authorizing collection of the civil penalty is a *qui tam* action, and therefore involves state action. Thus, since the excessive fine involves state action, defendant argues double jeopardy precludes him from being tried for larceny based on the same set of facts for which the excessive civil penalty was imposed.

The Double Jeopardy Clause provides that no person shall ". . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This clause prohibits "a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense." *Montana Dept. of Rev. v. Kurth Ranch*, 511 U.S. 767, 769, n.1, 128 L. Ed. 2d 767, 773, n.1 (1994). "The Law of the Land Clause incorporates similar protections under the North Carolina Constitution." *State v. Oliver*, 343 N.C. 202, 205, 470 S.E.2d 16, 18 (1996) (citing N.C. Const. art. I, § 19).

The United States Supreme Court modified the standard for double jeopardy analysis in *Hudson v. United States*, 522 U.S. 93, 139 L. Ed. 2d 450 (1997). The *Hudson* Court noted that "the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment." *Id.* at 98-99, 139 L. Ed. 2d at 458 (*quoting United States ex rel. Marcus v. Hess*, 317 U.S. 537, 87 L. Ed. 443 (1943)). Instead, "[t]he Clause protects only against the imposition of multiple criminal punishments for the same offense." *Id.* at 99, 139 L. Ed. 2d at 458 (citations omitted). In *Hudson,* the Court applied the following two-part test for determining whether a statute imposes punishment for double jeopardy purposes:

> Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty."

*Id.* at 99, 139 L. Ed. 2d at 459 (citations omitted).

The *Hudson* Court suggested that when determining the second part of the test, the factors listed previously in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644 (1963), are useful. These factors include:

> [(1)] [w]hether the sanction involves an affirmative disability or restraint[;] [(2)] whether it has historically been regarded as a punishment[;] [(3)] whether it comes into play only on a finding of scienter[;] [(4)] whether its operation will promote the traditional aims of punishment—retribution and deterrence[;] [(5)] whether the behavior to which it applies is already a crime[;] [(6)] whether an alternative purpose to which it may rationally be connected is assignable for it[;] and [(7)] whether it appears excessive in relation to the alternative purpose assigned.

*Kennedy*, 372 U.S. at 168-69, 9 L. Ed. 2d at 661. The *Hudson* Court emphasized that no one factor is controlling. Further, the clearest proof is required to override legislative intent and conclude that an Act denominated civil is punitive in purpose or effect. *Seling v. Young*, 531 U.S. 250, 261, 148 L. Ed. 2d 734, 746 (2001).

In applying the *Hudson* two-part inquiry, we must examine the purpose behind G.S. § 1-538.2, the statute at issue in this case. We first note that G.S. § 1-538.2 is labeled "Civil liability for larceny, shoplifting, theft by employee, embezzlement, and obtaining property by false pretense." Additionally, according to subsection (a), any person who commits the listed crimes is liable for "civil damages" to the owner of the property. The statute provides only a civil remedy, limited to an amount between $150 and $1,000.

Having determined that the legislature expressly intended that the remedy under the statute is civil in nature, we now turn to the issue of whether the effect of G.S. § 1-538.2 transforms what was intended as a civil remedy into a criminal penalty. In our determination of this second part of the inquiry we refer to the seven *Kennedy* factors listed *supra*. As to the first factor, the statute in question does not impose an "affirmative disability" since that term is normally understood to mean some sanction "approaching the 'infamous punishment' of imprisonment." *Hudson*, 522 U.S. at 104, 139 L. Ed. 2d at 462 (citations omitted). As to the second *Kennedy* factor, monetary sanctions have historically not been viewed as criminal punishment. *Helvering v. Mitchell*, 303 U.S. 391, 82 L. Ed. 917 (1938). "Historically, punishment has taken the forms of incarceration and incapacitation." *State v. Evans*, 145 N.C. App. 324, 333, 550 S.E.2d

853, 859 (2001). Because these forms of punishment are not available under G.S. § 1-538.2, defendant has failed to establish the second *Kennedy* factor. The third *Kennedy* factor is met since a finding of scienter is required by the statute because the underlying criminal acts require intentional conduct.

The fourth *Kennedy* factor asks whether the sanction promotes "the traditional aims of punishment—retribution and deterrence." *Kennedy*, 372 U.S. at 168, 9 L. Ed. 2d at 661. Defendant contends that the threat of punitive damages if defendant does not pay the amount demanded promotes a traditional aim of punishment in the form of deterrence. But, the Supreme Court recognized in *Hudson*, ". . . all civil penalties have some deterrent effect." *Hudson*, 522 U.S. at 102, 139 L. Ed. 2d at 461. The Court further stated "[i]f a sanction must be 'solely' remedial (i.e., entirely nondeterrent) to avoid implicating the Double Jeopardy Clause, then no civil penalties are beyond the scope of the Clause." *Id.* Thus, the Court noted that "the mere presence of a [deterrent quality] is insufficient to render a sanction criminal [because] deterrence 'may serve civil, as well as criminal goals.' " *Id.* at 105, 139 L. Ed. 2d at 463 (quoting *United States v. Ursery*, 518 U.S. 267, 135 L. Ed. 2d 549 (1996)). The statute at issue in this case, has a remedial effect in that it allows merchants to recover for their losses attributable to others' misconduct. That the statute may also have a deterrent effect is, by itself, insufficient to implicate double jeopardy.

The fifth *Kennedy* factor asks "whether the behavior to which [the statute] applies is already a crime." *Kennedy*, 372 U.S. at 168, 9 L. Ed. 2d at 661. The statute at issue only applies to a person who commits a crime punishable under G.S. §§ 14-72 (larceny of property; receiving stolen goods or possessing stolen goods), 14-72.1 (concealment of merchandise in mercantile establishments), 14-74 (larceny by employees), 14-90 (embezzlement of property received by virtue of office or employment), or 14-100 (obtaining property by false pretenses). Thus, the fifth factor is met. However, "[t]his fact is insufficient to render" the monetary sanction "criminally punitive, particularly in the double jeopardy context." *Hudson* 522 U.S. at 105, 139 L. Ed 2d at 462 (citations omitted).

To apply the final two factors of the *Kennedy* analysis, we must determine whether there is a remedial purpose behind G.S. § 1-538.2, and if so, whether the sanction is excessive in relation to the remedial purpose. As stated earlier, there is a remedial purpose behind the

monetary sanctions imposed by G.S. § 1-538.2 since it allows merchants to recover their losses due to others' malfeasance without having to resort to the criminal process or wait for the results of the criminal process before collecting damages. Defendant contends that the penalty is excessive *per se* because it is greater than the penalty allowed by the statute. Defendant argues that under the statute, the merchant may seek actual damages listed in G.S. § 1-538.2(a) or a minimum of $150, whichever is greater, by way of a demand letter. Defendant reasons that since The Sports Authority sought damages of $200 but failed to list any damages in excess of $150 in the demand letter, The Sports Authority sought civil damages beyond those allowed by statute. Defendant further states that since the additional $50 requested in the demand letter could not be damages or attorney's fees, it must therefore be a penalty. We disagree.

First, we note that there is no explicit requirement in G.S. § 1-538.2 that the demand letter contain an itemization of additional damages sought over $150. Thus, the monetary sanction is not excessive *per se*. Further, defendant's argument that the additional $50 could not be damages or attorney's fees and therefore must be a penalty fails as well, as the additional $50 sought by the victim in this case could reasonably consist of consequential damages recoverable under the statute. Subsections (c1)(1) and (c1)(2) include, as recoverable consequential damages "[t]he salary paid to any employee for investigation, reporting, testifying, or any other time related to the investigation or prosecution for any violation under subsection (a) of this section; and [a]ny costs, such as mileage, postage, stationery, or telephone expenses that were incurred as a result of the violation." Clearly, The Sports Authority incurred such costs, even though not itemized in the letter; therefore, the additional $50 does not constitute an excessive fee.

There is some ambiguity in the statute as to the amount of damages that may be demanded. The sample demand letter set out in section (c2) provides the following:

"Our records show that on (date), you unlawfully took possession of property from (store name/owner of the property), located in (city, state), without the consent of (store name/owner of the property), without paying for the property, and with the intent of converting the property to your own use. In accordance with G.S. 1-538.2, we are authorized to demand that you pay damages of one hundred fifty dollars ($150.00).

In the event you fail to comply with our demand for one hundred fifty dollars ($150.00) within 15 days from the date of your receipt of the notice, you may be held civilly liable for an amount not less than one hundred fifty dollars ($150.00) and not more than one thousand dollars ($1,000) in a civil action against you to recover the penalties and damages authorized by law, which include court costs and attorneys' fees. If you pay the one hundred fifty dollars ($150.00), (store name/owner of the property) will have no further civil remedy against you arising from the events occurring on (date).

If you are the parent or legal guardian of an unemancipated minor who unlawfully took possession of property as set out above, you can be held liable if you knew or should have known of the propensity of the child to commit the act complained of, and you had the opportunity and ability to control the child and you made no reasonable effort to correct or restrain the child.

If you believe you have received this notice in error, please contact (name) immediately.

YOU HAVE A RIGHT TO CONTEST YOUR LIABILITY IN COURT."

In the sample letter, $150 is used for the amount of damages demanded. However, a demand letter sent, according to the statute, must only be "substantially similar" to the sample demand letter. Thus, the $150 listed in the sample letter is not a predetermined, limited amount. Similarly, the language of subsection (c4) lends further ambiguity to the amount which can be requested, stating that if the recipient of the notice "pays the demanded one hundred fifty dollars ($150.00) within 15 days of the recipient's receipt of the notice, the owner of the property shall have no further civil remedy . . . ." To interpret the subsection as limiting to $150 the amount which the victim may demand would, however, be inconsistent with the statutory scheme as a whole, since the purpose of the statute is to give the owner of property an expedited and simple means of recovering his/her loss. Subsection (c4) may be explained as simply parroting the language found in the sample demand letter in subsection (c2).

We conclude that the sanction allowed by G.S. § 1-538.2 is not excessive in relation to the remedial purpose since the damages are limited to between $150 and $1,000 and the statute's purpose is to

restore to the victims of theft, embezzlement or fraud the value of their loss caused by the misconduct of others.

[2] Defendant also argues that the extra $50 which he paid to The Sports Authority is an excessive fine under the Excessive Fines Clause of the Eighth Amendment. The Eighth Amendment reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The United States Supreme Court has concluded that the Excessive Fines Clause "does not constrain an award of money damages in a civil suit when the government neither has prosecuted the action nor has any right to receive a share of the damages awarded." *Browning-Ferris v. Kelco Disposal, Inc.*, 492 U.S. 257, 264, 106 L. Ed. 2d 219, 231 (1989). The Court, however, specifically left open the question of whether the Clause applies to *qui tam* actions. *Id.* at 276, n.21, 106 L. Ed. 2d at 238, n.21. "*Qui tam* actions are those 'brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.' " *Fuller v. Easley*, 145 N.C. App. 391, 397, 553 S.E.2d 43, 47 (2001), (quoting *Black's Law Dictionary* 1262 (7th ed. 1998)). In the present case, neither the government nor a specified, public institution received any portion of the amount paid by defendant to The Sports Authority. Moreover, no action was prosecuted by The Sports Authority since defendant voluntarily paid in response to the demand letter. Therefore, there was no *qui tam* action and accordingly, defendant's Eighth Amendment argument fails.

Defendant has expressly abandoned his remaining assignment of error. We find no error in the denial of his motion to dismiss.

No error.

Chief Judge EAGLES and Judge BIGGS concur.