STATE OF NORTH CAROLINA v. ROBERT PETER VOGT, JR.

No. COA08-1441

(Filed 3 November 2009)

**Criminal Law; Indecent Liberties— satellite-based monitor-
ing—conviction predated effective date of satellite-based
monitoring statutes**

The trial court did not err in an indecent liberties case by
ordering that defendant be enrolled in a lifetime satellite-based
monitoring (SBM) program even though the date upon which he
committed the offense for which he was convicted predated the
effective date of the SBM statutes. Retroactive application of the
SBM provisions does not violate the *ex post facto* clauses of the
state and federal constitutions and the record was devoid of any
indication that the State ever agreed to forego seeking to have
defendant enrolled in the SBM program.

Judge ELMORE dissenting.

Appeal by defendant from order entered 3 July 2008 by Judge
Beverly T. Beal in Mecklenburg County Superior Court. Heard in the
Court of Appeals 22 April 2009.

*Attorney General Roy Cooper, by Assistant Attorney General
Peter A. Regulski, for the State.*

*William D. Auman, for defendant.*

ERVIN, Judge.

On 28 August 2006, the Mecklenburg County Grand Jury returned
a true bill of indictment charging Defendant with taking indecent lib-
erties with a minor. On 9 June 2008, Defendant entered a plea of guilty
to that offense. After accepting Defendant's guilty plea, the trial court
found that Defendant had a prior record level of II. As a result, the
trial court sentenced Defendant to a minimum term of 15 months
and a maximum term of 18 months imprisonment in the custody of
the North Carolina Department of Correction. The trial court sus-
pended Defendant's active sentence and placed Defendant on super-
vised probation for a term of 60 months subject to a number of terms
and conditions, including, but not limited to, requiring that Defendant
serve an active term of 120 days in the custody of the Sheriff of
Mecklenburg County and that Defendant be supervised by officers

assigned to the Intensive Probation Program for a period of six months. The trial court also notified Defendant of his obligation to register "with the sheriff of the county where you reside for a period of at least 10 years, because you have been convicted of a 'reportable conviction' as defined by [N.C. Gen. Stat. §] 14-208.6(4)."

An additional hearing was held on 3 July 2008 for the purpose of determining whether Defendant would be subject to lifetime satellite-based monitoring. At the conclusion of the 3 July 2008 hearing, the trial court determined that Defendant had been convicted of third degree sexual exploitation of a minor in Avery County on 15 April 2005, that he was properly classified as a "recidivist" as that term is defined in N.C. Gen. Stat. § 14-208.6(2b), and that Defendant "shall be enrolled in a satellitebased monitoring program as a special condition of the defendant's probation and, following the period of supervised. probation, the defendant shall be enrolled in a satellite-based monitoring program for his/her natural life unless the monitoring program is terminated pursuant to [N.C. Gen. Stat. §] 14-208.43." Defendant noted an appeal to this Court from the 3 July 2008 order.

On appeal, Defendant contends that the trial court erred by subjecting him to lifetime satellite monitoring on the grounds that the date upon which he committed the offense leading to his 9 June 2008 conviction antedated the effective date of the satellite-based monitoring statutes[1] and that he received constitutionally deficient representation from his trial counsel because she failed to argue that subjecting Defendant to lifetime satellite-based monitoring violated his federal and state constitutional rights against the enactment of *ex post facto* laws. The section of Defendant's brief addressing the first issue does not, however, contain a traditional statutory construction argument focused on the structure, purpose, and language of the relevant statutory provisions. Instead, Defendant argues that these statutory provisions should not be applied to persons convicted of offenses committed prior to their effective date because doing so would violate the federal and state constitutional prohibition against the enactment of *ex post facto* laws and because applying the relevant statutory provisions in that manner would invalidate Defendant's guilty plea given that he could not have been advised that

---

1. According to the record, the offense which subjected Defendant to lifetime satellite-based monitoring was committed on 21 June 2006. The satellite-based monitoring statute became effective for defendants sentenced to intermediate punishment after 16 August 2006. Judgment was initially entered against Defendant on 9 June 2008. The trial court's order subjecting Defendant to lifetime satellite-based monitoring was entered on 3 July 2008.

he would be subjected to lifetime satellite-based monitoring as required by N.C. Gen. Stat. § 15A-1022 since such monitoring did not exist at the time that he entered his guilty plea.[2] Furthermore, given that courts are permitted to deal with ineffective assistance of counsel claims by "determin[ing] at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different," *State v. Braswell*, 312 N.C. 553, 563, 324 S.E.2d 241, 249 (1985), Defendant's ineffective assistance of counsel claim can be resolved in the event that subjecting Defendant to lifetime satellite-based monitoring does not violate the constitutional prohibition against the enactment of *ex post facto* laws.[3] As a result, Defendant's challenges to the 3 July 2008 order ultimately rest on contentions that subjecting him to lifetime satellite-based monitoring violates the constitutional prohibition against the enactment of *ex post facto* laws and results in a violation of N.C. Gen. Stat. § 15A-1022.

On 16 June 2009, a panel of this Court filed its decision in *State v. Bare*, —— N.C. App. ——, 677 S.E.2d 518 (2009). In *Bare*, we concluded that "the legislature intended [satellite-based monitoring] to be a civil and regulatory scheme," *Id.*, —— N.C. App. at ——, 677 S.E.2d at 524; that "the restrictions imposed by the [satellite-based monitoring] provisions do not negate the legislature's expressed civil intent," *Id.*, —— N.C. App. at ——, 677 S.E.2d at 531; and that "retroactive appli-

2. This aspect of Defendant's argument is not entirely clear to us. In his brief, Defendant states that, "[a]s the satellite monitoring law was not in effect until after entry of [Defendant's] plea, there is no question that he was not advised of the prospect of additional punishment being imposed at some later date." The record indicates that Defendant entered a plea of guilty to taking indecent liberties with a minor in Mecklenburg County File No. 06 CrS 236346 on 9 June 2008, almost two years after the lifetime satellite-based monitoring statutes became effective on 16 August 2006. From this language, one might well assume, as the State appears to do, that Defendant is making reference to his 15 April 2005 conviction in this portion of his brief. On the other hand, the dissent focuses on Defendant's plea agreement in this case. However, Defendant has not asked us to set aside his guilty plea or any requirement imposed upon him in Mecklenburg County File No. 06 CrS 235346 aside from the obligation that he be subject to lifetime satellite-based monitoring. On the contrary, he specifically states in his brief that "[D]efendant does not challenge any issue relating to the acceptance of his plea or judgment entered on" 9 June 2008. In addition, Defendant has not sought to have his 15 April 2005 conviction set aside either. Thus, we are at something of a loss to understand the exact nature of Defendant's argument in reliance on N.C. Gen. Stat. § 15A-1022, although we still address it in the text to a limited extent.

3. Not surprisingly, since the dissent reaches a different result than we do with respect to the principal substantive issue raised by Defendant's appeal, our dissenting colleague would not dispose of Defendant's ineffective assistance of counsel claim in the manner that we deem appropriate.

cation of the [satellite-based monitoring] provisions do[es] not violate the *ex post facto* clause." *Id.* In addition, we also concluded that "lifetime satellite-based monitoring was [not] an automatic result of defendant's no contest plea," "unlike a mandatory minimum sentence or an additional term of imprisonment," so that the fact that the defendant in *Bare* was not advised that he might be subjected to lifetime satellite-based monitoring at the time of his no contest plea did not serve to invalidate his conviction. *Id.*, —— N.C. App. at ——, 677 S.E.2d at 531-32. Since this Court has already decided both of the claims Defendant asserts in this case adversely to his position in *Bare* and since we are bound by our decision in *Bare* with respect to these issues, *In re Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) (stating that, "[w]here a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court"); *Harrison v. Harrison*, 180 N.C. App. 452, 455, 637 S.E.2d 284, 287 (2006) (stating that "it is axiomatic that one panel of the Court of Appeals may not overrule another panel"), we conclude that the trial court's decision should be affirmed on the basis of our decision in *Bare*.

Although this Court's decision in *Bare* addresses and rejects both of Defendant's challenges to the trial court's order, the dissent concludes that, because of differences between the record in this case and the record before the Court in *Bare*, we are entitled to look at certain issues relating to the lawfulness of satellite-based monitoring afresh and reach a different result.[4] The extent to which the dissent's argument has persuasive force hinges upon the extent to which it has identified legally material differences between the record before the Court in *Bare* and the record before the Court in this case. After carefully reviewing the opinion in *Bare* and the present record, we are not persuaded that we should revisit either of the relevant holdings in *Bare* on the grounds advocated by the dissent.

Although the dissent concedes "that most of [D]efendant's arguments were addressed by this Court several months ago in" *Bare*, our dissenting colleague believes "that we have the benefit of additional

---

4. As the dissent notes, the panel in *Bare* clearly indicated that its decisions were based on the record that was before it in that case. For example, the Court stated that, "[b]ased on the record before us, retroactive application of the [satellite-based monitoring] provisions do not violate the *ex post facto* clause." Thus, we do not dispute the dissent's proposition that a material difference in the record between this case and *Bare* could conceivably support a different outcome. Instead, for the reasons set out below, we simply do not believe that such a material difference exists in this case.

Department of Correction (DOC) rules and regulations" which serve to make [D]efendant's case distinguishable from" *Bare*. As we read the dissenting opinion, it distinguishes *Bare* from this case based upon its determination that we should judicially notice the North Carolina Department of Correction Policies-Procedures, No. VII.F Sex Offender Management Interim Policy (interim guidelines). In essence, the dissent utilizes various provisions of the interim guidelines to argue that the satellite-based monitoring statutes have a punitive effect under the test set out in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 9 L. Ed. 2d 644 (1963), so as to render the satellite-based monitoring program a "punishment" for purposes of the prohibition against the enactment of *ex post facto* laws. For example, in concluding that the satellite-based monitoring program "involves an affirmative disability or restraint," *Mendoza-Martinez*, 372 U.S. at 168, 9 L. Ed. 2d at 661, the dissent notes the provisions of the interim guidelines to the effect that " '[t]he offender *shall* cooperate with the [DOC] and the requirements of the satellite-based monitoring program;' " that "[a]n offender cannot leave the [S]tate of North Carolina;" that "[a]n offender is subject to unannounced warrantless searches of his residence every ninety days;" that "[a]n offender must maintain a daily schedule and curfew as established by his DOC case manager;" that "[a]n offender's schedule and curfew includes spending at least six hours each day at his residence in order to charge his portable tracking device;" and that, " '[i]f an offender has an active religious affiliation,' " "the offender's case manager must 'notify church officials of the offender's criminal history and supervision conditions[.]' " According to the dissent, given the provisions of the interim guidelines, "the [satellite-based monitoring] program imposes affirmative and intrusive post-discharge conduct [restrictions] upon offenders long after they have completed their sentences, their parole, their probation, and their regular post-release supervision; these restraints continue forever." As a result, the dissent concludes that, because the interim guidelines were not discussed in *Bare* and because these documents demonstrate that the satellite-based monitoring program has a punitive effect, we can appropriately revisit the issue of whether satellite-based monitoring constitutes a punishment rather than a civil and regulatory regime for purposes of the *ex post facto* provisions of the federal and state constitutions and conclude that the imposition of such monitoring upon Defendant violates the *ex post facto* law clauses despite the fact that a contrary result was reached in *Bare*.

Although we do not dispute the Court's authority to judicially notice the interim guidelines, *State ex rel. Utilities Commission v. Southern Bell Telephone and Telegraph Co.*, 289 N.C. 286, 288, 221 S.E.2d 322, 323 (1976), we are not persuaded that we should exercise our discretion to do so given that the parties did not bring these guidelines to our attention or discuss them in their briefs. N.C. Gen. Stat. § 8C-1, Rules 201(c) and (f). A decision to judicially notice the interim guidelines in this case does not simply have the effect of filling a gap in the record or supplying a missing, essentially undisputed fact; instead, judicially noticing the interim guidelines in this case introduces a large volume of additional information which has not been subjected to adversarial testing in the trial courts. In the absence of a full and thorough discussion of the contents and implications of these documents by the parties and in view of their interim nature, we are concerned about basing a decision of the nature suggested by the dissent upon them, since acting in that fashion might well put this Court in the position of a trier of fact, a role that we are not supposed to occupy. *Hobbs Staffing Servs., Inc. v. Lumbermens Mut. Cas. Co.* 168 N.C. App. 223, 226, 606 S.E.2d 708, 711 (2005) (stating that an appellate court should not initially decide questions of fact).

Furthermore, assuming that these documents are to be judicially noticed, we are not persuaded that they constitute a material difference between the record in this case and that before the Court in *Bare*. At bottom, the issue raised by Defendant's *ex post facto* challenge to the trial court's order subjecting him to lifetime satellite-based monitoring is whether that program as enacted by the General Assembly had a punitive effect.[5] In view of the fact that the Department of Correction's interim guidelines may or may not be sustained as consistent with the rulemaking and contracting authority granted by the General Assembly[6] in the event that they are subject

---

5. The dissent points out that, "[w]hen the legislature chooses not to amend a statutory provision that has been interpreted in a specific way, [the appellate courts] assume that it is satisfied with the administrative interpretation." *Wells v. Consol. Jud'l Ret. Sys. (of N.C.)*, 354 N.C. 313, 319-20, 553, S.E.2d 877, 881 (2001). A careful analysis of the decision upon which the dissent relies, however, indicates that the strength of this "legislative acquiescence" argument varies with the antiquity of the administrative interpretation. In this instance, the relative novelty of the satellite-based monitoring regime militates against giving much, if any, weight to any interpretation of the General Assembly's intent embodied in the interim guidelines.

6. According to N.C. Gen. Stat. § 14-208.40(a), the General Assembly required the "Department of Correction [to] establish a sex offender monitoring program that uses a continuous satellite-based monitoring system" and to "create guidelines to govern the program." Furthermore, N.C. Gen. Stat. § 14-208.40(d) provides that the Department of

**STATE v. VOGT**

[200 N.C. App. 664 (2009)]

to challenge in an appropriate forum, the fact that the guidelines are expressly described as interim in nature, and the fact that the courts retain the authority to strike down various provisions of the interim guidelines and related documents as violative of either the relevant statutory provisions or various provisions of the federal or state constitutions[7], it appears to us that we should focus our attention on the statutory provisions adopted by the General Assembly rather than on an executive branch agency's efforts to implement the General Assembly's decision in resolving the *ex post facto* law issue. To put it another way, it appears to us that the manner in which the Department of Correction chooses to implement the lifetime satellite-based monitoring program on an interim basis is a separate and distinct issue from the question of whether subjecting an individual to satellite-based monitoring based on a conviction for an offense that occurred prior to the effective date of the statutory provisions establishing that program violates the prohibition against the enactment of *ex post facto* laws. For all of these reasons, we do not believe that a decision to judicially notice the interim guidelines provides an adequate basis for disregarding the decision in *Bare*. As a result, despite the arguments advanced in the dissent, we believe that we remain bound by the *Bare* decision and that it precludes granting the relief requested by Defendant on appeal.[8]

In addition to concluding that "[D]efendant's enrollment in the [satellite-based monitoring] program constitute[d] an unconstitutional *ex post facto* punishment," the dissent also concludes that "the trial court erred by imposing a condition upon [D]efendant that was

Correction may enter into a contract or contracts with one or more vendors "for the hardware services needed to monitor subject offenders and correlate their movements to reported crime incidents." It should go without saying that the guidelines adopted and contracts entered into by the Department pursuant to N.C. Gen. Stat. § 14-208.40 must be consistent with the various statutory provisions governing the lifetime satellite-based monitoring program. *Com'r of Ins. v. Ins. Co.*, 28 N.C. App. 7, 11, 220 S.E.2d 409, 412 (1975) (stating that "[a]n administrative agency has no power to promulgate rules and regulations which alter or add to the law it was set up to administer or which have the effect of substantive law") (citation omitted).

7. To be absolutely clear, we believe that an individual subject to satellite-based monitoring has the right, in an appropriate proceeding, to challenge the validity of specific provisions of the interim guidelines or contracts on the grounds that they violate state or federal law, including relevant provisions of the federal and state constitutions, and obtain a ruling on that claim in the appropriate division of the General Court of Justice.

8. As should be obvious, we express no opinion about the likely outcome of an analysis using the *Mendoza-Martinez* factors conducted on the basis of a record that contains properly-developed information relating to the interim guidelines.

not specifically agreed to in his plea bargain." In essence, the dissent concludes that, since "[D]efendant received a punishment in excess of what he was promised in exchange for his guilty plea," he is entitled to be relieved from the requirement to participate in the satellite-based monitoring program. We find this argument unpersuasive for three different reasons.

First, the "negotiated plea" argument adopted in the dissent is foreclosed by our decision in *Bare*. As we have already noted, *Bare* held that satellite-based monitoring is a civil and regulatory rather than a punitive regime. Subjecting Defendant to the impact of a civil and regulatory regime is not tantamount to the imposition of an additional punishment. Thus, given that we are bound by the result reached in *Bare*, we cannot conclude that Defendant has been subjected to a punishment over and above that contemplated under his plea agreement.

Secondly, Defendant did not make the "negotiated plea" argument adopted in the dissent in his brief. Although the appellate courts in this jurisdiction have gone to considerable lengths to reach the merits where litigants have arguably presented substantive issues for review, *Carolina Forest Asso. v. White*, —— N.C. App. ——, ——, 678 S.E.2d 725, 729-30 (2009) (stating that the Court, "[a]fter careful study of the record and Defendant's brief," could "discern four possible issues in this appeal" and would address them rather than dismissing Plaintiffs' appeal), the Supreme Court has instructed us not to "create an appeal for an appellant." *Viar v. North Carolina Dept. of Transportation*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005). *See also State v. Garcell*, 363 N.C. 10, 70, 678 S.E.2d 618, 655 (2009) (stating, in reliance on N.C.R. App. P. 28(b)(6) that defendant's failure to provide any argument or supporting authority for certain assignments of error resulting in their abandonment). Although Defendant did, as we have already discussed, argue in his brief that construing the relevant statutory provisions as applicable to a person in his position would violate his rights under N.C. Gen. Stat. § 15A-1022(a), he never contended that the State breached his plea agreement by virtue of the fact that the trial court entered an order subjecting him to lifetime satellite-based monitoring. As a result, we believe that Defendant's failure to advance the "negotiated plea" argument adopted by the dissent on appeal precludes us from relying on it to exempt Defendant from participating in the satellite-based monitoring program.

Finally, the "negotiated plea" argument advanced by the dissent rests upon at least two fundamental premises that lack adequate

record support. First, we are not aware of any evidence in the record to the effect that, at the time that he entered his negotiated guilty plea, Defendant was unaware that the State took the position that he was subject to a satellite-based monitoring obligation. Secondly, in order for the dissent's "contract-based" theory to be sustainable, it appears to us that the State would have had to have agreed that Defendant would not be subject to satellite-based monitoring as part of the parties' plea agreement. Once again, the record is totally devoid of any indication that the State ever agreed to forego seeking to have Defendant enrolled in the satellite-based monitoring program. In the absence of evidentiary support for these two factual propositions, the "negotiated plea" argument advanced in the dissent is unpersuasive.

Thus, given our conclusion that this case is not materially distinguishable from *Bare* and that the issues that Defendant has brought forward for our consideration on appeal were resolved in the State's favor in *Bare*, we believe that we are obligated to affirm the trial court's order subjecting Defendant to lifetime satellite-based monitoring. As a result, the trial court's order should be, and hereby is, affirmed.

AFFIRMED.

Judge Stroud concurs.

Judge Elmore dissents in a separate opinion.

ELMORE, Judge, dissenting.

I respectfully dissent from the majority opinion affirming the trial court's order requiring defendant to enroll in satellite-based monitoring. Although I recognize that most of defendant's arguments were addressed by this Court several months ago in *State v. Bare*, I believe that we have the benefit of additional Department of Corrections (DOC) rules and regulations in this case, which makes defendant's case distinguishable from Mr. Bare's. In *Bare*, we explained repeatedly that our conclusions were based upon the record before us and that the record could not support a contrary finding. *See., e.g., State v. Bare,* —— N.C. App. ——, ——, 677 S.E.2d 518, 528 (2009). I believe that the record before us now can and should support a contrary finding.

Here, we may augment the record on appeal by taking judicial notice of the DOC's "Sex Offender Management Interim Policy" (Interim Policy). "The device of judicial notice is available to an appellate court as well as a trial court[.] This Court has recognized in the past that important public documents will be judicially noticed." *Utilities Comm. v. Southern Bell Telephone Company*, 289 N.C. 286, 288, 221 S.E.2d 322, 323 (1976) (quotations and citations omitted); *see also State v. R.R.*, 141 N.C. 846, 855, 54 S.E. 294, 297 (1906) ("Rules and regulations of one of the departments established in accordance with a statute have the force of law, and the courts take judicial notice of them[.]") (quotations and citations omitted). N.C. Gen. Stat. § 14-208.40 states that the DOC "shall create guidelines to govern the program," which "shall be designed to monitor two categories of offenders" and requires "that any offender who is enrolled in the satellite-based program submit to an active continuous satellite-based monitoring program, unless an active program will not work . . . ." N.C. Gen. Stat. § 14-208.40(a)-(b) (2007). There are no published regulations detailing the SBM guidelines because the DOC is exempt from the uniform system of administrative rulemaking set out in Article 2A of the Administrative Procedures Act "with respect to matters relating solely to persons in its custody or under its supervision, including prisoners, probationers, and parolees." N.C. Gen. Stat. § 150B-1(d)(6) (2007).[9] Instead, the DOC "shall adopt rules and regulations related to the conduct, supervision, rights and privileges of persons. . . . Such rules and regulations shall be filed with and published by the office of the Attorney General and shall be made available by the Department for public inspection." N.C. Gen. Stat. § 143B-261.1 (2007). The 2007 interim policy is such a rule or regulation and it is the sort of public document of which this Court may take judicial notice. *See Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 337, 341-42, 88 S.E.2d 333, 337, 340 (1955) (taking judicial notice of the North Carolina Building Code even though "the briefs of the parties make no reference to" it because its creation and adoption was required by statute and thus had the "force and effect of law"); *W. R. Company v. Property Tax Comm.*, 48 N.C. App. 245, 261, 269 S.E.2d 636, 645 (1980) (stating that we may take judicial notice of a corporate charter on file with the Secretary of State but not included by either party in the record on appeal); *Byrd v. Wilkins*, 69 N.C. App. 516, 518-19, 317 S.E.2d 108, 109 (1984) (taking

---

9. From the existence of the Interim Policy, I assume, without articulating a legal opinion on the matter, that the DOC treats offenders subject to satellite-based monitoring as persons "under its supervision."

judicial notice of a Commission for Health Services "regulation on the procedure to be followed in administering breathalyzer tests"); *see also Wells v. Consolidated Jud'l Ret. Sys. of N.C.*, 354 N.C. 313, 319-20, 553 S.E.2d 877, 881 (2001) ("When the legislature chooses not to amend a statutory provision that has been interpreted in a specific way, we assume it is satisfied with the administrative interpretation."). Our opinions in *Bare* and its progeny make no mention of the DOC's Interim Policy and, thus, in my opinion, the application of the Interim Policy is unique to defendant's appeal.

## A. Ex Post Facto Punishment

For the following reasons, I respectfully disagree with the majority's conclusion that SBM has no punitive purpose or effect and thus does not violate the *ex post facto* clause. To determine whether a statute is penal or regulatory in character, a court examines the following seven factors, known as the *Mendoza-Martinez* factors:

Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned[.]

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69, 9 L. Ed. 2d 644, 661 (1963) (footnotes and citations omitted). Although these factors "may often point in different directions[, a]bsent conclusive evidence of [legislative] intent as to the penal nature of a statute, these factors must be considered in relation to the statute on its face." *Id.* at 169, 9 L. Ed. 2d at 661. Because I believe that *Bare* is determinative as to the question of whether there is conclusive evidence that the legislature intended the SBM statute to be penal, I begin my analysis by examining the seven *Mendoza-Martinez* factors.

**1. Affirmative disability or restraint.** The first question is "[w]hether the sanction involves an affirmative disability or restraint." *Mendoza-Martinez*, 372 U.S. at 168, 9 L. Ed. 2d at 661 (footnote and citations omitted). To echo the Supreme Court of Indiana, "[t]he short answer is that the Act imposes significant affirmative obligations and a severe stigma on every person to whom it applies." *Wallace v. Indiana*, 905 N.E.2d 371, 379 (Ind. 2009).

Both the SBM statutory provisions and its implementing guidelines require affirmative and intrusive post-discharge conduct under threat of prosecution.

In addition to the regular sex offender registration program requirements, which, though judicially determined to be non-punitive, are nevertheless significant in practice, SBM participants are subject to the following additional affirmative disabilities or restraints: (1) The DOC has "the authority to have contact with the offender at the offender's residence or to require the offender to appear at a specific location as needed[.]" N.C. Gen. Stat. § 14-208.42 (2007). (2) "The offender *shall* cooperate with the [DOC] and the requirements of the satellite-based monitoring program[.]" *Id.* (emphasis added). (3) An offender cannot leave the state of North Carolina. *Sex Offender Management Interim Policy* 16 (effective 1 January 2007). (4) An offender must be at his residence for a minimum of four hours per day to charge the SBM device. *Id.* at 15.

Clearly, the SBM program imposes affirmative and intrusive post-discharge conduct upon an offender long after he has completed his sentence, his parole, his probation, and his regular post-release supervision; these restraints continue forever. Of particular note is the prohibition against leaving the state. As the U.S. Supreme Court has repeated,

> The word "travel" is not found in the text of the Constitution. Yet the constitutional right to travel from one State to another is firmly embedded in our jurisprudence. Indeed, as Justice Stewart reminded us in *Shapiro v. Thompson*, 394 U.S. 618, 22 L. Ed. 2d 600, 89 S. Ct. 1322 (1969), the right is so important that it is "assertable against private interference as well as governmental action . . . a virtually unconditional personal right, guaranteed by the Constitution to us all." *Id.*, at 643 (concurring opinion).

*Saenz v. Roe*, 526 U.S. 489, 498, 143 L. Ed. 2d 689, 701 (1999) (additional quotations and citations omitted). The government may only interfere with a citizen's right to interstate travel if it can show that such interference "is necessary to promote a compelling governmental interest[.]" *Id.* at 499, 143 L. Ed. 2d at 702 (quotations and citation omitted). Depriving an offender of his right to interstate travel is, without question, an affirmative disability or restraint.

Though some may argue that the remaining restrictions are mere inconveniences, this would be a deceiving understatement. Although offenders are no longer subject to formal probation, the requirements

that they are subject to are nearly if not equally as intrusive: they cannot spend nights away from their homes, they are subject to schedules and curfews, they must appear on command, and they must submit to all DOC requests. An offender's freedom is as restricted by the SBM monitoring requirements as by the regular conditions of probation, which include: remaining in the jurisdiction unless the court or a probation officer grants written permission to leave, reporting to a probation officer as directed, permitting the probation officer to visit at reasonable times, answering all reasonable inquiries by the probation officer, and notifying the probation officer of any change in address or employment.

Accordingly, I believe that SBM imposes an affirmative disability or restraint upon defendant, which weighs in favor of the SBM statute being punitive rather than regulatory.

**2. Sanctions that have historically been considered punishment.** The next question is whether SBM "has historically been regarded as a punishment." *Mendoza-Martinez*, 372 U.S. at 168, 9 L. Ed. 2d at 661 (footnote and citations omitted). Obviously, satellite monitoring technology is new and thus tracking offenders using the technology is not a historical or traditional punishment. However, the additional restrictions imposed upon offenders are considered punishments, both historically and currently. In addition, some courts have suggested that the SBM units, made up of an ankle bracelet and a miniature tracking device (MTD), are analogous to the historical punishments of shaming. *See, e.g., Doe v. Bredeson*, 507 F.3d 998, 1010 (2007) (Keith, J., concurring in part and dissenting in part), *cert. denied*, 172 L. Ed. 2d 210 (2008).

In *Bredeson*, the Sixth Circuit considered whether Tennessee's SBM statute violated the *ex post facto* clause. The *Bredeson* majority first held that the Tennessee legislature's purpose when enacting the SBM statute was to establish a civil, nonpunitive regime. *Id.* at 1004. The majority then examined the *Mendoza-Martinez* factors and concluded, in relevant part, that Tennessee's SBM program was not a sanction historically regarded as punishment. *Id.* at 1005. It explained that the Tennessee "Registration and Monitoring Acts do not increase the length of incarceration for covered sex offenders, nor do they prevent them from changing jobs or residences or traveling to the extent otherwise permitted by their conditions of parole or probation." *Id.* Judge Keith, in his dissent, characterized the GPS monitoring system as a "catalyst for ridicule" because the defendant's monitoring device was "visible to the public when worn" and had to "be worn every-

where" the defendant went. *Id.* at 1010 (Keith, J., dissenting in part and concurring in part). "Public shaming, humiliation, and banishment are well-recognized historical forms of punishments." *Id.* (citations omitted). It is clear from the DOC guidelines and maintenance agreements that the MTD must be worn on the outside of all clothing and cannot be concealed or camouflaged in any way, even though some forms of concealment or camouflage would not interfere with the LTD's function. In addition, an offender's religious institution must be informed of his status and his SBM compliance requirements. I agree with Judge Keith that the SBM scheme is reminiscent of historical shaming punishments, which weighs in favor of finding the scheme punitive, rather than regulatory.

**3. Finding of scienter.** The next question is whether the statute "comes into play only on a finding of *scienter.*" *Mendoza-Martinez,* 372 U.S. at 168, 9 L. Ed. 2d at 661 (footnote and citations omitted). I believe that this factor is met because the underlying criminal acts, indecent liberties with a child and third degree sexual exploitation of a minor, require intentional conduct. *State v. Beckham,* 148 N.C. App. 282, 286, 558 S.E.2d 255, 258 (2002) (citation omitted); *see* N.C. Gen. Stat. § 14-202.1(a) (2007) ("A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, he either: (1) *Willfully* takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the age of 16 years for the purpose of arousing or gratifying sexual desire; or (2) *Willfully* commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.") (emphasis added); N.C. Gen. Stat. § 14-190.17A(a) (2007) ("A person commits the offense of third degree sexual exploitation of a minor if, *knowing* the character or content of the material, he possesses material that contains a visual representation of a minor engaging in sexual activity.") (emphasis added).

**4. Traditional aims of punishment.** The next question is "whether the sanction promotes the 'traditional aims of punishment—retribution and deterrence.'" *Beckham,* 148 N.C. App. at 286, 558 S.E.2d at 258 (quoting M*endoza-Martinez,* 372 U.S. at 168, 9 L. Ed. 2d at 661). Without question, the sanction promotes deterrence. For example, offenders are restricted in their movements, ostensibly in part to prevent them from venturing into schoolyards or nurseries; when satellite-monitored offenders venture into these restricted zones, their supervisors are notified and the offender may

be charged with a felony. Although "the mere presence of a [deterrent quality] is insufficient to render a sanction criminal [because] deterrence may serve civil, as well as criminal goals," *Hudson v. United States*, 522 U.S. 93, 105, 139 L. Ed. 2d 450, 463 (1997) (quotations and citation omitted), the deterrent effect here is substantial and not merely incidental. Accordingly, it weighs in favor of finding the sanction to be punitive.

**5. Applicability only to criminal behavior.** The next question is "whether the behavior to which [the] statute applies is already a crime." *Mendoza-Martinez*, 372 U.S. at 168, 9 L. Ed. 2d at 567 (footnote and citation omitted). The SBM statute applies only to people who have been convicted of "reportable offenses." Thus, this factor weighs in favor of finding the sanction to be punitive.

**6. Advancing non-punitive interest.** The next question is "whether an alternative purpose to which [the statute] may rationally be connected is assignable for it[.]" *Id.* at 168-69, 9 L. Ed. 2d at 567 (footnote and citation omitted). The SBM statute does advance a rationally related non-punitive interest, which is to keep law enforcement officers informed of certain offenders' whereabouts in order to protect the public. Preventing further victimization by recidivists is a worthy non-punitive interest and one that weighs in favor of finding the sanction to be regulatory.

**7. Excessiveness in relation to State's articulated purpose.** The final question is "whether [the statute] appears excessive in relation to the alternative purpose assigned" to it. *Id.* at 169, 9 L. Ed. 2d at 568 (footnote and citation omitted). "The excessiveness inquiry . . . is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in light of the nonpunitive objective." *Smith v. Doe*, 538 U.S. 84, 105, 155 L. Ed. 2d 164, 185 (2003). Judge Keith, dissenting from the majority opinion in *Bredeson*, explained SBM's excessiveness as follows:

> I fail to see how putting all persons in public places on alert as to the presence of offenders, like Doe, helps law enforcement officers geographically link offenders to new crimes or release them from ongoing investigations. It equally eludes me as to how the satellite-based monitoring program prevents offenders, like Doe, from committing a new crime. Although the device is obvious, it cannot physically prevent an offender from re-offending.

Granted, it may help law enforcement officers track the offender (after the crime has already been committed), but it does not serve the intended purpose of public safety because neither the device, nor the monitoring, serve as actual preventative measures. Likewise, it is puzzling how the regulatory means of requiring the wearing of this plainly visible device fosters rehabilitation. To the contrary, and as the reflection above denotes, a public sighting of the modern day "scarlet letter"—the relatively large G.P.S. device—will undoubtedly cause panic, assaults, harassment, and humiliation. Of course, a state may improve the methods it uses to promote public safety and prevent sexual offenses, but requiring Doe to wear a visible device for the purpose of the satellite-based monitoring program is not a regulatory means that is reasonable with respect to its nonpunitive purpose.

Sexual offenses unquestionably rank amongst the most despicable crimes, and the government should take measures to protect the public and stop sexual offenders from re-offending. However, to allow the placement of a large, plainly obvious G.P.S. monitoring device on Doe that monitors his every move, is dangerously close to having a law enforcement officer openly escorting him to every place he chooses to visit for all (the general public) to see, but without the ability to prevent him from re-offending. As this is clearly excessive, this factor weighs in favor of finding the Surveillance Act's satellite-based monitoring program punitive.

*Bredesen*, 507 F.3d at 1012 (Keith, J., dissenting). I agree with Judge Keith's assessment; the restrictions imposed upon defendant by the SBM statute are dangerously close to supervised probation if not personal accompaniment by a DOC officer. The *Bredeson* majority dismissed Justice Keith's concerns about the device's visibility by stating its "belie[f] that the dimensions of the system, while not presently conspicuous, will only become smaller and less cumbersome as technology progresses." *Id.* at 1005. Smaller, less conspicuous, and less cumbersome technologies already exist, but implementation of new technologies is expensive and time-consuming. Though we may one day be able to tag and release a recidivist sex offender as though he were a migrating songbird, it is not a practical reality for defendant at this time or in the immediate future. The SBM equipment and accompanying restrictions as they exist now support a conclusion that SBM is a punishment.

In sum, of the seven factors specifically identified by the U.S. Supreme Court in *Mendoza-Martinez* as relevant to the inquiry of whether a statute has a punitive effect despite legislative intent to the contrary, I believe that six factors point in favor of treating the SBM provisions as punitive. Only one—that the statute advances a non-punitive purpose—points in favor of treating the SBM provisions as non-punitive. Accordingly, I would hold that defendant's enrollment in the SBM program constitutes a punishment.

Accordingly, I would also hold that defendant's enrollment in the SBM program constitutes an unconstitutional *ex post facto* punishment.

## B. Ineffective Assistance of Counsel and Double Jeopardy

I also respectfully disagree with the majority's analysis of defendant's ineffective assistance of counsel argument. Because I would hold that SBM is a criminal punishment, not a civil regulatory scheme, I would not dismiss this argument on those bases.

## C. Violation of Plea Bargain

Finally, I respectfully disagree with the majority's analysis of defendant's argument that the trial court erred by imposing a condition upon defendant that was not specifically agreed to in his plea bargain. "Although a plea agreement occurs in the context of a criminal proceeding, it remains contractual in nature. A plea agreement will be valid if both sides voluntarily and knowingly fulfill every aspect of the bargain." *State v. Rodriguez*, 111 N.C. App. 141, 144, 431 S.E.2d 788, 790 (1993) (citations omitted). In *Rodriguez*, we explained that, because a defendant surrenders fundamental constitutional rights when he pleads guilty based upon the State's promise, "when a prosecutor fails to fulfill promises made to the defendant in negotiating a plea bargain, the defendant's constitutional rights have been violated and he is entitled to relief." *Id.* at 145, 431 S.E.2d at 790 (quotations and citations omitted). Accordingly, I would hold that defendant received a punishment in excess of what he was promised in exchange for his guilty plea in violation of his constitutional rights.

For the foregoing reasons, I would reverse the order imposing lifetime satellite-based monitoring upon defendant.