DILLON, Judge.
*2 During the 2012 election cycle, a political advertisement sponsored by the Employees Political Action Committee ("EMPAC"), the political arm of the State Employees Association of North Carolina ("SEANC"), ran on television supporting Linda Coleman, Democratic candidate for Lieutenant Governor. The Committee to Elect Dan Forest (the "Committee") commenced this action seeking statutory damages, contending that EMPAC's television ad violated the "stand by your ad" law, which was still in effect during the 2012 campaign cycle.
The trial court granted summary judgment for EMPAC, concluding that the law was unconstitutional as applied because Mr. Forest could *3 not forecast any evidence that he *740 suffered any actual damages, presumably because Mr. Forest won the election anyway. We reverse the trial court's order granting summary judgment and remand the matter for further proceedings consistent with this opinion.
I. Background
In 1999, the General Assembly enacted a "stand by your ad" law, codified in N.C. Gen. Stat. § 163-278.39A (hereinafter referred to as the "Disclosure Statute"), to regulate political advertisements. The Disclosure Statute required in relevant part that any television ad sponsored by a political action committee contain: (1) a "disclosure statement" identifying the sponsor of the ad spoken by either the sponsor's chief executive officer ("CEO") or its treasurer; and (2) a "full-screen picture containing [this] disclosing individual" featured during the disclosure statement. N.C. Gen. Stat. § 163-278.39A(b)(3) and (6) (2012).[1]
The Disclosure Statute creates the right for a candidate to seek statutory damages against an ad sponsor who runs a non-conforming ad in the candidate's race. N.C. Gen. Stat. § 163.278.39A(f).
In 2012, North Carolina's race for Lieutenant Governor featured two candidates: Dan Forest and Linda Coleman. EMPAC ran a television advertisement in support of Ms. Coleman during the 2012 election cycle. There is evidence in the Record that this ad's disclosure statement violated the Disclosure Statute in two different ways: (1) the picture of the disclosing individual was not a "full-screen" picture, but rather was much smaller; and (2) the disclosing individual depicted in the ad was neither EMPAC's CEO nor Treasurer, but was rather Dana Cope, the then-CEO of EMPAC's affiliate entity, SEANC.
Mr. Forest's Committee filed a notice of complaint with the State Board of Elections (the "SBOE"), whereupon EMPAC pulled the offending ad and ran a new ad for the remainder of the 2012 election cycle with a disclosure which complied with the Disclosure Statute. Mr. Forest won the 2012 election for Lieutenant Governor by a narrow margin of 6,858 votes out of over 4 million votes cast. After the election, Mr. Forest's Committee commenced this action seeking statutory damages against EMPAC for its nonconforming ad supporting Ms. Coleman. The trial court granted summary judgment to EMPAC. The Committee timely appealed.
*4 II. Condition Precedent
Before addressing the arguments of the parties, we address the argument raised by our dissenting colleague. Specifically, the Disclosure Statute requires that in order to preserve the right to bring an action for damages, a candidate's committee must first "complete and file a Notice of Complaint" with the SBOE regarding the nonconforming ad no later than three days after the election. N.C. Gen. Stat. § 163-278.39A(f)(1).[2] Our dissenting colleague contends that the Record fails to demonstrate that the Committee filed a notice of complaint with the SBOE by the Friday following the 2012 election as required by the Disclosure Statute.
We agree with our dissenting colleague that the requirement to file a notice of complaint with the SBOE is a statutory "condition precedent" which cannot be waived; that is, by the terms of the Disclosure Statute, it was a condition precedent to bringing this matter that Mr. Forest's Committee first have lodged a complaint with the SBOE regarding EMPAC's ad by the Friday following the election. See Bolick v. American Barmag Corp. , 306 N.C. 364, 368-69, 293 S.E.2d 415, 419 (1982). However, we disagree with our dissenting colleague that the Record lacks sufficient evidence to create an issue of *741 fact that the Committee satisfied this condition precedent. Specifically, the Record contains a verified Complaint[3] in which the Committee alleges that it indeed sent a notice of complaint regarding EMPAC's nonconforming ad to the SBOE before the election, in late October 2012. Additionally, the Record contains a copy of this notice of complaint, which was attached as an exhibit to the verified Complaint. This notice of complaint is dated 26 October 2012, it states that it is being filed that same day, and it too is verified. There was no other evidence before the trial court at the summary judgment hearing concerning this issue; EMPAC never raised the issue at summary judgment nor has EMPAC raised the issue in its brief on appeal. Accordingly, we conclude that the Record shows that the Committee met its burden at summary judgment of presenting evidence that it timely filed a notice of complaint with the SBOE.
We note the dissent's argument concerning the lack of a file stamp of the SBOE on the copy of the notice of complaint contained in the *5 Record. We disagree with the dissent that this lack of a file stamp is fatal to the Committee's claim. First, the lack of a file stamp does not bear on our appellate jurisdiction; and therefore, Crowell v. State , 328 N.C. 563, 402 S.E.2d 407 (1991) and McKinney v. Duncan , --- N.C. App. ----, ----, 808 S.E.2d 509, 512 (2017), cited in the dissent, are inapposite. It is clear from the Record that our Court has appellate jurisdiction to consider the trial court's summary judgment.
Secondly, the lack of a file stamp was not fatal to the superior court's jurisdiction. Though the Committee bears the burden to show that it filed a notice of complaint with the SBOE within three days of the 2012 election, we note that providing a filed stamped copy of the notice is not the only way in which the Committee may meet its burden. Indeed, even the cases cited by our dissenting colleague, State v. High , 230 N.C. App. 330, 750 S.E.2d 9 (2013) and State v. Moore , 148 N.C. App 568, 559 S.E.2d 565 (2002), suggest that producing a file-stamped copy is not the only means to meet the burden of showing that a document was filed. These cases stand for the proposition that a trial court lacks jurisdiction to revoke a criminal defendant's probation based on a probation violation report which was not filed prior to the expiration of the defendant's probation period. In each case, we held that the State failed to meet its burden to show that the probation violation report was filed prior to the expiration of the defendant's probation period. However, we recognized that presenting a filed-stamped copy was not the only way which the State could have met its burden. For instance, in High , we vacated the trial court's order because "the [violation] reports were not filed stamped, nor [was] there any other evidence in the record indicating that the reports were actually filed within the period of probation." High , 230 N.C. App. at 336, 750 S.E.2d at 14 (emphasis added). And in Moore , we vacated the trial court's order, stating that "[i]n the absence of a filed stamped motion or any other evidence of the motion's timely filing [,] the trial court is without jurisdiction." Moore , 148 N.C. App. at 570, 559 S.E.2d at 566 (emphasis added). But in the matter before us, though the copy of the notice of complaint in the Record lacks the file stamp of the SBOE, the Record does contain other evidence showing that the notice of complaint was timely filed with the SBOE, as outlined above.
III. Analysis
We now turn to the arguments raised by the parties in their appellate briefs. In this matter, the trial court granted summary judgment in favor of EMPAC on the Committee's claim for statutory damages, concluding that "in the absence of any forecast of actual demonstrable damages [suffered by Mr. Forest], the statute at issue is unconstitutional *6 as applied." In essence, the trial court did not declare the Disclosure Statute unconstitutional per se , but rather held that Mr. Forest lacked standing to seek damages under the Statute since he did not suffer any actual damages, apparently because he won the election. *742 On appeal, the Committee contends that the trial court erred in its ruling. EMPAC argues that the trial court correctly determined that the Disclosure Statute is unconstitutional as applied and further argues that the Disclosure Statute is unconstitutional on its face. We review these constitutional arguments de novo . Forbis v. Neal , 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007) ("The standard of review for summary judgment is de novo."); State ex rel. McCrory v. Berger , 368 N.C. 633, 639, 781 S.E.2d 248, 252 (2016) ("We review constitutional questions de novo.").
A. Dan Forest's Committee Has Standing To Seek Damages.
The trial court essentially concluded that Dan Forest's Committee lacked standing to bring this suit based on the absence of any evidence that Mr. Forest suffered any actual damage. That is, because Mr. Forest won the 2012 election, he had no standing, in the constitutional sense, to seek statutory damages allowed under the Disclosure Statute. However, based on controlling precedent, it is clear that Mr. Forest's Committee does have standing: simply because Mr. Forest won his election does not mean that he did not suffer an injury sufficient in a constitutional sense to confer standing.
The North Carolina Constitution provides in regard to standing as follows:
All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay.
N.C. Const. art. I, § 18 (emphasis added). According to our Supreme Court, "[t]he North Carolina Constitution confers standing on those who suffer harm[,]" Mangum v. Raleigh Bd. of Adjustment , 362 N.C. 640, 642, 669 S.E.2d 279, 281 (2008), and that one must have suffered some "injury in fact" to have standing to sue, Dunn v. Pate , 334 N.C. 115, 119, 431 S.E.2d 178, 181 (1993).
Our Supreme Court has held in a variety of contexts that a party has standing to bring suit where a private right has been breached, even where the party has not suffered actual damages beyond that fact that a breach occurred. The breach itself is an "injury in fact." For instance, one has standing to seek nominal damages "where some legal right has *7 been invaded but no actual loss or substantial injury has been sustained. Nominal damages are awarded in recognition of the right and of the technical injury resulting from its violation." Potts v. Howser , 274 N.C. 49, 61, 161 S.E.2d 737, 747 (1968). A party to a contract has standing to bring suit where the other party has breached the contract, even if no actual damage is shown. Kirby v. Stokes County , 230 N.C. 619, 627, 55 S.E.2d 322, 327 (1949). An owner of land has the right to exclusive possession of his property and has standing to bring suit against anyone who trespasses, even where the owner suffers no actual damage; the owner's legal right to exclusive enjoyment of his property has been invaded. Hildebrand v. Southern Bell , 219 N.C. 402, 408, 14 S.E.2d 252, 257 (1941) (holding that a landowner "is entitled to be protected as to that which is his without regard to its money value").
If EMPAC had slandered Mr. Forest in its political ad, Mr. Forest would have had standing to seek at least nominal damages for this tort, even though he won the election. Wolfe v. Montgomery Ward , 211 N.C. 295, 296, 189 S.E. 772, 772 (1937) (holding that a plaintiff who has been slandered has standing to seek nominal damages even where there is no evidence that he suffered actual damages).
The private right at issue in the present case was not one that existed at common law but rather was one created by our General Assembly in the Disclosure Statute to provide an enforcement mechanism. This private right is a right expressly conferred by our General Assembly on a candidate to participate in an election where sponsors of political ads supporting his or her opponent must make themselves known to the public in their ads. The General Assembly acted within its authority to create a private right not recognized in the common law:
The legislative branch of government is without question the policy-making agency of our government, and when it elects to legislate in respect to the subject matter of *743 any common law rule, the statute supplants the common law rule[.]
Rhyne v. K-Mart Corp. , 358 N.C. 160, 169, 594 S.E.2d 1, 8 (2004). See also Bumpers v. Cmty. Bank , 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013) (recognizing our General Assembly's authority to prohibit unfair and deceptive trade practices and to create a private cause of action in favor of a class of individuals to enforce this prohibition).
Our Court has held that a party has standing to sue for statutory damages without having to demonstrate actual damages where the statute at issue creates a private cause of action as a mechanism to enforce *8 the provisions of the statute at issue. See Addison v. Britt , 83 N.C. App. 418, 421, 350 S.E.2d 158, 160 (1986) (Chief Judge Eagles, joined by future Chief Justice Parker and future Justice Webb, writing that "[o]nce a violation of an actionable portion of the [Truth In Lending Act] is established, the debtor is entitled to recover statutory damages [and that b]ecause the purpose of that section is to encourage private enforcement of the Act, proof of actual damages is unnecessary").
Concerning the Disclosure Statute at issue here, in 2012, in an opinion joined by Judge (now Justice) Beasley, our Court recognized that by enacting the Disclosure Statute in 1999, the General Assembly made the policy decision to create disclosure rules in political advertising and to enforce those rules through a "private cause of action," by which candidates may seek statutory damages when those rules have been broken. Friends of Queen v. Hise , 223 N.C. App. 395, 735 S.E.2d 229 (2012) (footnote 7). The General Assembly expressly created a private right of action for political candidates and their committees to enforce its policy decision to require that political television ad sponsors be properly disclosed. It is equally clear that a candidate suffers an "injury in fact" for a breach, even a technical breach, of this right when an ad is run in the candidate's election which runs afoul of the Disclosure Statute. This "injury in fact" is a breach of a private right similar to a breach of a private right suffered by a party to a contract who has suffered a breach by the other party to that contract, or by a landowner whose land has been trespassed upon, or by an individual who has been slandered. Even though there may not be any other actual damage, like the loss of an election; the breach of the private right, itself, constitutes an injury which provides standing to seek recourse.[4]
We are not to be concerned with the "wisdom or expediency" of the Disclosure Statute, but rather we are only concerned with whether the General Assembly had the "power" to enact the law. In re Denial , 307 N.C. 52, 57, 296 S.E.2d 281, 284 (1982). We conclude that the General Assembly acted within its authority in 1999 when it enacted the Disclosure Statute to require that political ads disclose their sponsors and to provide the committee of a political candidate running for office with a private cause of action to seek damages against the sponsor *9 of a nonconforming ad, just as we conclude that the General Assembly acted within its authority in 2013 to repeal the law.
B. Dan Forest's Committee May Seek Statutory Damages Without Showing Evidence of Actual Damage.
Having concluded that Mr. Forest's Committee has standing to bring this action, we now consider whether the Committee may recover the statutory damages provided under the Disclosure Statute without presenting any evidence that Mr. Forest suffered any actual monetary damages.
The Disclosure Statute provides that a candidate receiving a favorable verdict is entitled to statutory damages equal to the "total dollar amount" spent by the ad sponsor to air the nonconforming ad. N.C. Gen. Stat. § 163-278.39A(f)(2). In this case, while the exact amount EMPAC spent on the nonconforming ad has yet to be determined, EMPAC argues that any amount of statutory *744 damages would be an unconstitutional "windfall" to Mr. Forest's Committee, since Mr. Forest won the election. The Committee, though, argues that the statutory damages imposed by the Disclosure Statute is not unconstitutional "as applied" here even if the Committee fails to present evidence of actual quantifiable damages.
We conclude that the General Assembly has the authority to provide for statutory damages and, therefore, that the Committee may seek statutory damages. Specifically, our Court has recognized this authority in the context of the Disclosure Statute. See Friends of Queen, supra. There are other contexts where an award of statutory damages, without a showing of actual damages, has been sustained. See, e.g., Simmons v. Kross Lieberman , 228 N.C. App. 425, 431, 746 S.E.2d 311, 315 (2013) (holding that a party may recover a civil penalty as provided by statute without showing actual damages for violations of our Debt Collection Act under Chapter 58); State v. Beckham , 148 N.C. App. 282, 558 S.E.2d 255 (2002) (holding that an award of statutory damages of $150 under N.C. Gen. Stat. § 1-538.2, where actual damages shown was less, was civil in nature and appropriate); see also N.C. Gen. Stat. § 25-9-625(e) (providing that debtors may recover $500 per violation).[5]
*10 Furthermore, statutory damages which may exceed a plaintiff's actual damages are not unconstitutional unless the statutory damage award "prescribed is so severe and oppressive as to be wholly disproportionate to the offense and obviously unreasonable." St. Louis v. Williams , 251 U.S. 63, 66-67, 40 S.Ct. 71, 64 L.Ed. 139 (1919). Our Supreme Court has recognized this principle. N.C. School Board v. Moore , 359 N.C. 474, 496-97, 614 S.E.2d 504, 517-18 (2005) (recognizing the principle that "rough justice, not absolute precision, was sufficient in evaluating the amount of [statutory] damages so long as the amount of the penalty was not severely disproportionate [to the actual damages]").
Therefore, we conclude that the Committee need not put forth evidence of actual damages in order to seek statutory damages. Such is not required in other contexts where statutory damages are allowed. However, we recognize that there may be situations where an award of statutory damages might be unconstitutionally excessive and would need to be reduced. For example, if a political action committee spent $1 million running an ad which did not feature the picture of the disclosing individual until a second after the disclosure statement commenced (where the Disclosure Statute requires the picture be displayed "throughout the duration of the disclosure statement"), an award of $1 million might be deemed unconstitutionally excessive. Such an award may be viewed as "oppressive" and "wholly disproportionate" to such a minor technical violation, and it might be appropriate to reduce such award.
But, here, it could be argued that EMPAC's violation was more substantial. Specifically, it is possible that having Dana Cope, a then-popular executive director of EMPAC's affiliate entity, SEANC, shown as the disclosing individual may have given the ad a level of gravitas that it would not have enjoyed if an unknown officer of EMPAC had been depicted. We conclude, however, that it is premature to decide whether the statutory damages allowed under the Disclosure Statute would be unconstitutionally excessive in this case, as the amount of statutory damages, if any, has yet to be determined.
C. The Disclosure Statute is Facially Constitutional. (First Amendment Challenge)
EMPAC argues, as an alternate legal ground to support the trial court's summary *745 judgment, that the Disclosure Statute is unconstitutional on *11 its face . Specifically, EMPAC contends that the Disclosure Statute constitutes a content-based restriction on speech, in violation of the First Amendment, because it requires that political ads contain a disclosure, while not requiring other forms of advertisement to contain a disclosure. We must disagree. Specifically, the United States Supreme Court has expressly held that a law requiring a disclaimer or a disclosure identifying the sponsor of a political ad is not a content-based restriction on speech requiring strict scrutiny review. Citizens United v. FEC , 558 U.S. 310, 366, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010) ("Disclaimer and disclosure requirements ... 'do not prevent anyone from speaking.' ") (quoting McConnell v. FEC , 540 U.S. 93, 201, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003) ). Rather, the Court held that such laws limit only the manner of speech and are, therefore, subject only to "exacting scrutiny" review. Citizens United , 558 U.S. at 366, 130 S.Ct. 876. And we are bound by that determination.
To survive "exacting scrutiny" review, which is generally considered to be synonymous with "intermediate scrutiny" review, the law "need not [provide] the least restrictive or least intrusive means" of reaching a government objective. Ward v. Rock Against Racism , 491 U.S. 781, 784, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989). Rather, there need only be a "substantial relation" between the law and a "sufficiently important" governmental interest. Citizens United , 558 U.S. at 366-67, 130 S.Ct. 876.
In Citizens United , the Court found that a law requiring disclosures in political advertising can survive "exacting scrutiny" review "based on a governmental interest in 'provid[ing] the electorate with information' about the sources of election-related spending," Id. at 367, 130 S.Ct. 876, and that such disclosures "permit[ ] citizens and shareholders to react to the speech of corporate entities in a proper way, [which] enables the electorate to make informed decisions and give proper weight to different speakers and messages," Id. at 371, 130 S.Ct. 876.
The Disclosure Statute here, requiring a sponsor's CEO or treasurer read a short disclaimer while his or her picture is displayed, is similar to and not any more onerous than the statute sustained by the United States Supreme Court in Citizens United , a statute which required that political ads contain a disclosure statement which:
[M]ust be made in a "clearly spoken manner," and displayed on the screen in a "clearly readable manner" for at least four seconds. It must state that the communication "is not authorized by any candidate or candidate's committee"; it must also display the name and address (or Web site address) of the person or group that funded the advertisement.
*12 Id. at 366, 130 S.Ct. 876. EMPAC's argument concerning the facial validity of the Disclosure Statute is, therefore, overruled.
IV. Conclusion
This matter involves the partisan political process. And there is an element of political irony; a Republican invoking a law passed by a Democratic-controlled General Assembly and later repealed by a Republican-controlled General Assembly. However, our job is not to consider the politics of the parties involved. Rather, our job is simply to apply the law, irrespective of politics.
Applying the law, we must conclude that our General Assembly acted within its authority in 1999 when it enacted the Disclosure Statute, creating a private cause of action in favor of political candidates against the sponsors of political ads who fail to properly disclose their identity, just as the General Assembly acted within its authority when it took away this statutory right in 2013. Therefore, we must conclude that the trial court erred in granting summary judgment in favor of EMPAC. We reverse the order of the trial court and remand the matter for further proceedings consistent with this opinion. In so ordering, we note that whether the Disclosure Statute is unconstitutional as applied because the amount of statutory damages allowed thereunder is unconstitutionally excessive is not before us since the amount of statutory damages has yet to be determined in this case.
REVERSED AND REMANDED.
*746 Judge CALABRIA concurs.
Chief Judge McGEE dissents.

The Disclosure Statute was repealed by the General Assembly during its 2013 session, effective 1 January 2014. See Session Law 2013-381, § 44.1. Neither party made any argument concerning any effect the repeal may have had on the Committee's right to bring this action; and, therefore, we do not consider the issue.

The Disclosure Statute also requires a complaining candidate to bring the action within ninety (90) days of the election. Here, there is no dispute that Mr. Forest's committee brought action on 28 December 2012, well within ninety (90) days of the election. That action was dismissed pursuant to Rule 41; however, this present action was commenced within the time required in Rule 41.

The Committee's Complaint was verified by Mr. Forest.

The United States Supreme Court has recently explained that an "injury in fact" need not be "tangible" for standing to exist. Spokeo v. Robins , --- U.S. ----, 136 S.Ct. 1540, 1549, 194 L.Ed.2d 635 (2016). Spokeo addressed the issue of standing in the federal context. Our Supreme Court has instructed that federal cases may be instructive, though they are not binding, noting that "the nuts and bolts of North Carolina standing doctrine are not coincident with federal standing doctrine." Goldston v. State , 361 N.C. 26, 35, 637 S.E.2d 876, 882 (2006).

In the federal context, there are a number of situations where a plaintiff may recover statutory damage relief without any showing of actual damages: the Copyright Act (17 U.S.C. § 504(c) ) which allows a plaintiff to recover between $750 and $30,000 for each act of infringement instead of actual damages; the Cable Piracy Act (47 U.S.C. § 605(e) ) which allows a plaintiff to recover between $1,000 and $10,000 in lieu of actual damages; the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d) ) which allows a plaintiff to recover between $1,000 and $100,000 from any person who registers in bad faith a domain name that is confusingly similar to the plaintiff's distinctive mark; and the Fair Debt Collection Practices Act of 1978 (15 U.S.C. § 1692k(a) ) which allows plaintiffs to recover from debt collectors as much as $1,000 per violation of the Act's requirements.